# Williams *v.* Hendricks.

*Action to recover Statutory Penalty for Cutting Trees from Land of Another.*

1. *Liability of principal, master or partner for tortious acts of agent, servant or co-partner; distinction between common law and statutory liability.*—There is a broad and well recognized distinction as to the liability of a principal, master or partner, when it is sought to hold

[Williams v. Hendricks.]

him responsible upon a common law liability and when it is sought to recover from him a statutory penalty, for the tortious acts of his agent, servant or co-partner. In the former case, he is liable for the acts done within the scope of the employment or partnership business, while in the latter, the statute gives the penalty against the actual wrong-doer only.

2. *Partnership*; *liability of one partner for tortious acts of the other*. The tortious cutting of trees upon the lands of another by one partner, within the scope and in the prosecution of the partnership business, fastens a common law liability upon the other partner to the owner of the trees, for such damages as result naturally and proximately from the wrongful cutting of the trees.

3. *Same; one partner not liable for statutory penalty for wrongful acts of co-partner.*—To subject any one to a statutory penalty for the doing of an act forbidden by statute, it must be shown that the party charged committed the wrongful act knowingly and willfully, or caused another to do it by his command or authority; and one partner can not be made liable for the statutory penalty for the doing of a forbidden act by his partner, even though it be within the scope of the partnership business, unless it is shown that the wrongdoer acted under the immediate authority and direction of his co-partner, who is sought to be charged.

4. *Same; same; cutting of trees upon the land of another.*—The member of a partnership, who neither procured, knew of, nor assented to his partner willfully and knowingly cutting trees from land, without the owner's consent, is not liable for the statutory penalty (Code of 1886, § 3296), although the tortious acts of his co-partner were done in the prosecution of the partnership business.

5. *Pleading and practice*; *misleading and argumentative charge*; *appeal.*—The giving of misleading and argumentative charges do not ordinarily work the reversal of the judgment of the trial court; but when it is manifest to the appellate court that the giving of such charges may have unduly influenced the jury and thereby probably defeated a fair verdict, this court will reverse the judgment and remand the cause.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. J. W. FOSTER.

This action was brought by the appellee, L. Hendricks, against the appellant, R. J. Williams, to recover the statutory penalty for cutting 34 oak trees from the land of the plaintiff. The defendant pleaded the general issue and the statute of limitations of one year, upon which pleas issue was joined.

The evidence for the plaintiff was to the effect that the defendant and one D. F. Hinton were partners in getting out staves. That said Hinton entered upon the

land of plaintiff after he had refused to allow either the defendant or Hinton to cut timber therefrom, and cut down 34 oak trees, which he used in making staves. That after cutting these trees, the defendant offered to pay plaintiff a certain amount for the timber which had been cut, as shown by the statement which he presented to the plaintiff, but that the plaintiff declined to accept this payment.

The evidence for the defendant was to the effect that he and Hinton were in partnership in the stave business; that the defendant furnished the money and Hinton did the work, looking after the business of getting the staves and timber. That he did not authorize or instruct Hinton to cut timber from the plaintiff's land, and did not know that he had done so until several months after the cutting, and that he offered to pay the plaintiff for the timber cut upon his land, the amount which Hinton said was due the plaintiff therefor, when he, Hinton, rendered him the statement some months after the cutting.

Hinton testified as a witness in behalf of the defendant that he had an agreement with the plaintiff by which he bought the plaintiff's timber for a certain price, and that the cutting was done under this agreement; that the defendant did not know of the cutting of the timber from the plaintiff's land until several months after it was done, and that the defendant did not authorize or instruct him to cut such timber.

Upon the introduction of all the evidence, the court at the request of the plaintiff, among others, gave to the jury the following written charges: (1.) "Although Williams was the partner of Hinton, yet if he knowingly aided and abetted, or assisted in cutting the timber, he would be liable as to the question of cutting." (2.) "If Williams was partner of Hinton, the jury should look at this fact in connection with all the evidence, to ascertain whether Hinton informed Williams that he was cutting Hendricks' timber, and if Williams knew that he was cutting the timber, and did not object thereto, but assented to his going on with the cutting, then Williams would be aiding, abetting or assisting Hinton." (4.) "If Williams was a co-partner with Hinton, then the jury should look at the facts in connection with all the evidence to ascertain whether he

knew what Hinton was doing, and whether he aided, abetted or assisted Hinton knowingly in cutting the timber." (6.) "If Williams was a partner of Hinton, and he knowingly aided, assisted or abetted Hinton in cutting the timber, then Williams is as liable as Hinton." (7.) "In order to ascertain whether Williams aided, abetted or assisted Hinton in cutting the timber, the jury should, in connection with all the evidence, look at the evidence that Williams offered to purchase the timber, and that he offered to pay Hendricks some money therefor after it was cut, and that he furnished the money to pay the hands for cutting, and that the hands went to his store to get pay." (10.) "If the defendant knew the trees cut were not on his own land, and did not know on whose land the trees cut were, then this is sufficient to charge him with knowledge that the trees were Hendricks', if from the evidence the jury believe the trees were Hendricks'." The defendant separately excepted to the giving of each of the charges requested by the plaintiff, and also excepted to the court's refusal to give the following charge requested by him : "If the jury believe all the evidence in this case, they should find for the defendant."

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the giving of the charges requested by the defendant, and the refusal of the court to give the charges requested by him.

R. L. HARMON, for appellant.—1. This case directly presents the question for the first time to this court, as to whether or not a partnership engaged in business, when one of the partners violates a statute and subjects himself to the recovery of the penalty, he binds the innocent partner, who had no knowledge of the cutting or removing of the trees. The statute under which this suit is brought is highly penal, and must be strictly construed. The plaintiff in order to recover, must bring himself both within the letter and spirit of the statute. *Clifton Iron Co. v. Curry*, 108 Ala. 581; *Postal Telegraph Co. v. Lenoir*, 107 Ala. 640.

2. The statute in question uses the words : "Any person who * * * willfully and knowingly, without the consent of the owner of the land."—Code of 1886,

[Williams v. Hendricks.]

§ 3296.  Did the legislature intend that any one should be liable for this severe penalty, who had no knowledge or intention of committing the act?  We think that actual knowledgé, coupled with the willful or intentional act, must be shown to bring the defendant within the terms of the statute.  Hinton cut the trees without the knowledge or consent of the defendant, as affirmatively shown, without conflict, by the evidence.  Suppose the partnership of Williams & Hinton had been engaged in selling whiskey, and Hinton had unlawfully sold whiskey to a minor, would his innocent partner be liable?—*Patterson v. State,* 21 Ala. 571.  We submit that in such a case the knowledge or authority of the defendant would be necessary to render him liable; and the question under consideration is a similar one.—17 Amer. & Eng. Encyc. of Law, 1069; *Palmer v. Scott,* 68 Ala. 380; *Witcher v. Brewer,* 49 Ala. 119.

3.  In all the cases where the innocent partner is held liable for the tort or wrongful act of his co-partner, it is a common law liability, and not a strict statutory liability, which requires the intent and actual knowledge on the part of the defendant in order to render him liable.—*Stewart v. Levy,* 36 Cal. 159.  In the case of *Porter v. Vance,* 14 Lea (Tenn.) 629, it is decided that an attorney is not liable for a penalty for his partner's failure to pay their collections, nor is he subject to summary compulsion to pay money appropriated by his co-partner.—Bates Law of Partnership, § 478; *Rosenkrans Barker,* 115 Ill. 331; *Grooms v. Hannon,* 59 Ala. 510.

HUBBARD & HUBBARD, *contra.*—1.  "The cutting alone, if done with a knowledge that the party was doing a wrongful act, or that he was cutting trees on land which did not belong to him, is sufficient."—*Allison v. Little,* 85 Ala. 517; *Givens v. Kendrick,* 15 Ala. 651.

2.  Williams is liable by the relation of partner.—*Allen v. Leighton,* 87 Me. 206.  The requirement to enter satisfaction of a mortgage is as penal as this case.  Yet notice to one member renders the other liable for the penalty.—*Williams v. Bowdin,* 68 Ala. 126; *Renfro v. Adams,* 62 Ala. 305.  The statute against cutting trees is no less penal than that satisfying mortgages.—*Postal Tel. Co. v. Brantley,* 107 Ala. 687.

COLEMAN, J.—Section 3296 of the Code of 1886, provides that "any person who cuts down any oak * * * on land not his own, willfully and knowingly, without the consent of the owner of the land, must pay to the owner ten dollars for every such tree," &c. The plaintiff, the appellee, sued to recover the statutory penalty for cutting down thirty-four oak trees. The evidence shows that the defendant and one Hinton were partners in getting staves, and according to their agreement, the defendant furnished the money for the partnership and Hinton attended to the business of getting out the staves. He furnished to defendant at regular stated periods the amounts due parties from whom trees were purchased, and also what was due for labor, and the defendant settled the claims as thus reported. There was evidence tending to show, that Hinton had no authority from defendant to cut trees on any land except by agreement and purchase from the owner, and that the trees in controversy were cut by Hinton for staves without the knowledge and consent of the defendant. One of the questions involved in the case was, whether the fact that defendant and Hinton were partners in the stave business subjected the defendant to the statutory penalty. In Story on Partnership, section 168, the following language is used : "From what has been already suggested, it is obvious, that a tort committed by one partner, or by any other agent of the partnership, will not bind the partnership, unless it be, either authorized or adopted by the firm, or be within the scope and business of the partnership." The general rule is that those partners only are liable in respect of a tort who are privy to the tort ; but this rule is subject to the exception, that partners are responsible for the tortious acts of a partner in the prosecution of the co-partnership business. Collyer on Partnership, § 457.; 3 Kent, § 47, note. The rule is well settled, at least in this State, that the master is liable for the willful tortious acts of his servants done within the scope and range of his employment, although the particular act was not authorized by the master. The rule as here declared was at first limited to actions against railroads.—*Gilliam v. S. & N. A. R. R. Co.*, 70 Ala. 268. But if sound as to railroads, there seems to be no good reason why it should not apply, under like circumstances, in all cases of *respondeat superior*, or to a part-

ner acting for and within the scope of the business. *Lilley v. Fletcher*, 81 Ala. 234; *A. G. S. R. R. Co. v. Frazier*, 93 Ala. 45; *Kansas City, M. & B. R. R. Co. v. Higdon*, 94 Ala. 286. In all these cases where the principle was applied, the action sought to hold the principal or superior responsible for a common law liability. The actions were to recover damages sustained as the consequential and natural result of the tort of the agent or servant. If in the case at bar the plaintiff had sued to recover the consequential damages sustained by the tortious cutting of the trees by Hinton, the partner, we would without hesitation, under the well settled principles declared in the foregoing cases, hold that defendant was responsible for such damages, resulting naturally and proximately from the tortious acts of his partner, done in the range of the partnership business. The penalty is not imposed for a mere mistake or negligence in cutting the trees. The cutting must be done knowingly and willfully. Different principles arise when it is sought to hold a principal responsible for the criminal acts of his agent or servant. The act is highly penal, and must be strictly construed; and before a party can be subjected to its penalties, it must clearly appear that he has violated it knowingly and willfully. It is not enough in such a case, that a partner or servant, without his knowledge and contrary to instructions and against his assent, has committed the unlawful act. To so hold would be to extend the statute by judicial interpretation beyond its meaning and its positive terms. *Clifton Iron Co. v. Curry*, 108 Ala. 581. In the case of *Patterson v. The State*, 21 Ala. 571, it was held that a principal was not bound, unless he authorized or co-operated in the illegal act of his clerk. In *Barnett v. The State*, 54 Ala. 579, 587, the rule is thus declared: "A principal or a partner may be civilly liable in damages for the tort of his agent or associate, under facts which would not subject him to criminal responsibility. In a civil suit, the material inquiry is, whether the wrong was done while the agent was within the line of duty with which he was charged, or the partner within the scope of his partnership. In criminal cases, it is the participation of the principal or partner in the wrongful act, either directly by concurring therein or by assenting thereto. If the principal or partner, com-

mands, procures or expresses assent that the wrong shall be done, before or at the time of the commission, criminal responsibility may be fixed upon him."—*Nall v. The State*, 34 Ala. 262; *Seibert v. The State*, 40 Ala. 62.

In the case of *Smith v. Causey*, 22 Ala. 568, the suit was to recover statutory penalty of double damages for causing an injury to stock. The court held that the statute was penal, and to enable a party to recover under the statute, it must be shown "that the injury to the stock of the plaintiff arose out of some act of the defendant, done, or commanded or directed to be done by him. If this be not shown he can not be said, in the meaning of the statute, to cause it to be done. The mere negligence of the servant, acting in the ordinary business of the master, although the damage to the stock of the plaintiff actually results from such negligence, will not authorize a recovery." "It may often happen" (continues the court) "that an action on the case at common law would well lie to recover damages for the injury so done when a proceeding under the statute would not."

We find a similar ruling in the case of *Cushing v. Dill*, (3 Ill. 460) 2 Scammon's Rep. 460, where the action was to recover a statutory penalty given for cutting trees, very similar to our statute. We quote from the decision as follows : "This action is brought upon a penal statute, the object of which is to punish the wrongdoer, as well as to recompense the injured individual. To subject any one, therefore, to the penalty of the act, it must be shown to have been willfully violated, by proof that the party charged, committed the forbidden act himself, or caused another to do it by his command or authority. The statute gives the penalty against the actual trespasser only ; it would be a violation of legal principles, therefore, to extend it so as to embrace another by implication.

"The liability arising from the relation of master and servant, is founded in policy, but the implication of authority in the servant, that would render the master liable in many cases in a civil suit, would not be sufficient to convict him in a criminal or. penal prosecution. The maxim, *qui facit per alium facit per se*, would be strictly applicable in an action of trespass against Cushing, but in this prosecution he is liable only for his per-

[Williams v. Hendricks.]

sonal acts or such acts of his workmen or servants as are proved to have been done by his express, or, at least, necessarily implied, authority.

"There is no proof of such acts, or such authority having been given by Cushing, to those who committed the trespass ; he can not, therefore, be considered liable under the statute.

"Although Dill can not recover in this action, he is not without a remedy for the injury sustained. That given by the statute is in addition to the remedy at common law, and an action under it would not be a bar to a suit at common law, in any result."

In the case of *Satterfield v. Western U. Tel. Co.*, 23 App. Court, Ill. 446, the action was brought against the Telegraph Company to recover the statutory penalty for trees conceded by the court, to have been cut under the directions of the superintendent of the wires of the defendant. There was no evidence to show that the trees were cut under any authority, or directions of the defendant, or had been ratified by it. The court conceded the liability of the principal or master for the torts of the agent done within the scope of his authority, but held that the principle did not apply when the action was brought to recover the statutory penalty.

A statute of Massachusetts requires "that whenever persons travelling with any kind of vehicle shall meet each other upon a road or bridge, each of them shall seasonably drive his vehicle to the right of the middle," &c. "Every person offending against the provisions (of the act) shall for each offense forfeit a sum not exceeding twenty dollars   *   *   *   and be further liable to any party for all damages sustained by reason of such offense." In the case of *Goodhue v. Dix*, 2 Gray 181, the plaintiff sought to hold the principal or master liable, upon the ground that the servant omitted seasonably to drive to the right as provided in the statute. The court held that the employer or owner of the vehicle was not liable under the statute, "if he be in no way implicated in the conduct of the servant," and that the liability was limited to the particular individual who was guilty of its violation. The case recognized the common law liability of the principal or employer for the acts of the agent or servant, but held the rule did not apply under the statute.

In the case of *Reynolds v. Hanrahan*, 100 Mass. 313, the

[Williams v. Hendricks.]

acts were very similar if not identical with those stated in *Goodhue v. Dix*, 2 Gray 181, *supra*, but the complaint was framed upon the common law liability of the master for the acts of the servant, and not upon the statute. The court recognized the principle declared in 2 Gray, but called attention to the fact, that in the one case, the action was under the statute, and in the case at bar the action was upon the common law liability of the defendant. In the latter case the defendant was held liable for the acts of the servant, while under the statute, the liability was limited to the particular person who violated it.

We think it is clear that the authorities make a broad distinction as to the liability of a principal or master, where it is sought to hold him responsible upon a common law liability, for the torts of the agent or servant, and when it is sought to recover from him a statutory penalty. In the former cases he is liable for the acts done within the scope of his employment. In the latter, the liability is fixed and limited by the statute itself. The distinction is clear and rests upon sound principles of law.

What was said in the case of *Postal Telegraph Co. v. Brantley*, 107 Ala. 683, and *Ib. v. Lenoir*, *Ib.* 640, is wholly correct when applied to the common law action for the recovery of damages. A decision of the question now considered was not before the court in either of those cases, and what was said with reference to the liability of a principal for the statutory penalty was merely *dictum*. We have been referred to the case of *Renfro & Andrews v. Adams*, 62 Ala. 302, where the action was for the recovery of the penalty imposed for a failure to enter satisfaction of a mortgage under section 2223 of the Code of 1876. We approve of all that was said and decided in that case. The mortgage was executed to the partnership as a unit, and the action was against the partnership as a unit. The statute imposed the penalty upon "any mortgagee who failed to enter satisfaction after notice by the mortgagor." The duty was imposed upon the partnership as mortgagee. The question was, whether notice to one partner was notice to the partnership. We do not doubt that it was correctly held to be sufficient. Under the one act, mere negligence or failure to act incurs the penalty. In the other, an affirmative act knowingly and willfully done is necessary.

[Highland Avenue & Belt Railroad Co. v. Swope.]

This court will not ordinarily reverse a cause because of giving instructions to the jury which are merely misleading or argumentative, though it is better that such charges be refused. But when it is manifest that misleading and argumentative charges given were of such a character as to have probably unduly influenced the jury and thereby probably defeated a fair verdict, it becomes the duty of the court to reverse and remand the cause. Charges numbered 2, 4 and 7 were objectionable, in singling out and giving undue prominence to the fact of the partnership. Charge 7 was not only an argument throughout, but under the facts of the case highly injurious to the defendant. This charge utterly ignored that part of the evidence, which showed that Hinton claimed to have cut the trees by virtue of an agreement of purchase from plaintiff, and so reported to the defendant, and that the offer to pay may have proceeded from the representation or statement of Hinton.

Reversed and remanded.