139 So. 409

**GRANADE v. UNITED STATES LUMBER & COTTON CO.**

I Div. 660.

Supreme Court of Alabama.

Dec. 17, 1931.

Rehearing Denied Jan. 21, 1932.

Adams & Gillmore, of Grove Hill, for appellee.

THOMAS, J.

The trial was had on two counts, one for trespass upon lands and the other for conversion of pine logs cut therefrom.

The pleas were the general issue and payment.

Plaintiff's title deed shown was from Fairford Lumber Company to United States Lumber & Cotton Company of date of February 26, 1910, and duly recorded.

Mr. Wiggins, secretary of the grantee corporation, testified that his company took possession of the lands; that they worked it for turpentine, paid the taxes thereon, and had continuous possession from the date of the deed until the suit; that the defendant admitted he had caused the timber to be cut, under a contract or agreement with Mr. Courtney, trustee, attorney and agent for the plaintiff; that he had sòld lumber interests to E. L. Jordan and Brownlee Lumber Company under a cutting contract.

J. Massey Edgar and Granade & Granade, all of Chatom, for appellant.

The witness further testified on cross-examination that Mr. Courtney had acted as trustee for receipts and disbursements from its turpentine operations for a period of time, could not say who appointed or constituted him such trustee for the United States Lumber & Cotton Company; that he so acted, in

the fall of 1924 and up to early 1925; that he (witness) new nothing about how plaintiff got possession of this property "except from records and seeing them in possession"; that he did not know whether plaintiff or defendant turpentined the lands; and admitted that Young worked for plaintiff prior to the cutting. The witness was not permitted, over plaintiff's objection, to answer whether plaintiff company was or was not in bankruptcy, or "When was the company put in bankruptcy?" or whether or not his company "made a composition settlement with its creditors," and when the president of the company was in England and when he returned. Likewise, the letter from Granade to Courtney of date of February 9, 1924, accepting the former's contract or sale of timber interest on these lands, was excluded on plaintiff's motion. To the foregoing and several rulings, the defendant excepted. This evidence was material and competent, as tending to show whether there was a willful trespass in the cutting in question, or whether it was done by and under contract or consent of the plaintiff's trustee and agent, who had authority over these lands at the time of the cutting.

■ The witness Jordan testified that plaintiff had been in possession of the lands since 1910, and the timber was cut therefrom in the spring of 1925 by B. L. Onderdonk. And over defendant's objection and exception was asked: "Did or not Mr. Onderdonk make any statement to you with reference to the authority he was cutting under and who authorized him to cut it?" and answered: "The best I recall he said he bought it from Mr. Granade, the defendant. This conversation was out there in the woods." This was merely hearsay, as to its binding effect upon defendant-appellant. 1 Brick. Digest, p. 843, § 560; Dothard v. Denson, 72 Ala. 541, 544; Doe ex dem. Hooper v. Clayton et al., 81 Ala. 391, 2 So. 24; Daffron v. Crump, 69 Ala. 77; Shelton v. Stapler, 219 Ala. 15, 121 So. 34; Sovereign Camp, W. O. W. v. Hoomes, 219 Ala. 560, 564, 122 So. 686. The trial court was in error in allowing the witness to answer as to the source of title.

■ An important inquiry is: Was the value of the timber cut from the original tract and from the lands in question? The witness E. L. Jordan, having testified as to its market value as cut from the land by Onderdonk, was cross-examined by defendant as to the location and value of the timber cut by some party from adjacent lands on the same original tract. Witness further stated that Onderdonk was cutting near the line of one of the 40's when "he said he had bought the timber from Granade, the defendant. He did not tell me that he had a deed for the timber. * * * Might have mentioned Bud Wilkins being with him, but I knew they were both in connection. I did not see Wilkins there"; that "This timber was worth $8.00 per M"; that witness had "just bought some of the same timber at $4.50 and $5.00 per M—straight through"; that he thought the "timber on the NE-¼ of NE-¼ of Section 23 was the best timber on that Section"; that the "lands in Section 14 were about like the rest of the swamps." Whereupon the defendant asked the witness: "That original contract which the company (plaintiff) made was for $3.25 per M. was it not?" Plaintiff's objection was sustained, and exception reserved by defendant to this cross-examination; it was competent to test the recollection, bias, or judgment of the witness. Such collateral inquiry on cross-examination was proper, in the absence of the contract, and it was error to deny that right.

■ And for like reason the question to the witness, "Your feeling towards the plaintiff is absolutely friendly, is it not?" was relevant and material. The witness was then permitted to testify that his "feeling towards defendant is good"; that he had "not caused another suit to be filed against defendant"; that "the way (he) I understand the case, I am the main witness against this defendant in another case." The question of his relation and feeling as to plaintiff that was denied was relevant and was pursuant to a proper cross-examination in testing bias or prejudice of the witness as to the respective parties.

■ It has been shown by the witness Wiggins that the timber in question had been sold to E. L. Jordan and Brownlee Lumber Company on a cutting contract. The record recites:

"Question: As to the lands described in this suit, the two '40's' in 14, and two '40's' in 23, had the Washington Lumber & Turpentine Co. submitted to the U. S. Lumber and Cotton Company any timber estimate as is called for by this contract, or had they paid the U. S. Lumber and Cotton Company, the agreed price for this timber? Defendant objected to the question as irrelevant, immaterial and incompetent; as calling for an opinion or conclusion of the witness; as seeming to vary the terms of the instrument (it must stand as it is). The court overruled the objection, whereupon the defendant then and there duly excepted.

"The witness answered—'No sir, none of that had been released or paid for.' Counsel for defendant moved the court to exclude the answer as irrelevant, immaterial and incompetent, calling for the opinion or conclusion of the witness; as attempting to vary the terms of the instrument; and because it would not affect the title or rights of anyone in this case.

"The court denied the motion, whereupon defendant then and there duly excepted."

The evidence had shown that the United States Lumber & Cotton Company had sold

and conveyed the timber in question to the Washington Lumber & Turpentine Company, and about the time of the conclusion of the cutting entered into a second conveyance, affirming the previous sale and making slight changes in its terms. These contracts cannot be materially altered or impeached in these proceedings. They require no parol testimony to explain them; there being no latent ambiguities. The words employed in the conveyances show that the title had passed from the United States Lumber & Cotton Company to the Washington Lumber & Turpentine Company, at the time of the alleged trespass or conversion by defendant, subject to the terms of that written contract of sale. It is true that the clause attempted to be explained by the witness were placed therein for the protection of the United States Lumber & Cotton Company, as to estimates and subsequent installment payments of the purchase price for the timber to be cut and that which had been sold and conveyed. That is to say, the evidence tended to show that the sale had been effected, the conveyance delivered and recorded, the Washington Lumber & Turpentine Company had been put in possession of these timber lands, and the property was being looked after by one Young, an employee of the last purchasing corporation. This evidence afforded a reasonable inference of fact that, if there was any right of action, it was not against the defendant—such as an accounting with the party who was under the duty to care and protect the timber until finally paid for and released by the original grantor. And the foregoing inquiry, permitted against defendant's objection, as to releasing the lands by the United States Lumber & Cotton Company to the Washington Lumber & Turpentine Company, and whether the purchase price was paid, was immaterial and harmful in the suit against the defendant by the United States Lumber & Cotton Company for trespass and conversion.

■ The witness Blackwell was shown to be sufficiently qualified as to permit him to "refresh his memory" from the cruise notes, and then testify to the quantity of timber which he found on the lands in dispute. It was shown that he cruised these lands with others; the "field sheet" was proved correct by those who made that cruise and reduced the same to writing. It was shown that the cruising, as it appears on the "field sheet," was made up or entered and sent in to the Mobile office by Blackwell. He was thus permitted to testify that he had a memorandum which he made at the time and which he knew to be accurate, and was therefore competent as an expert to state the amount of pine that had been cut.

■ Defendant attempted to show by one Young the amount of pine timber cut from the lands in question. It was shown that Young, months after the timber had been cut and removed, with others, counted the stumps, measured the distance from the butt of the stump to the top where it had been sawn, made the usual allowances and inferences of fact, and calculated the amount of timber in each tree from these measurements. He testified that his calculations were based upon the estimate of a given number of logs from each tree; the estimating of the size of the small end of each log, its distance, etc., from the butt. Such is the method employed by an expert cruiser, and he was shown to have been an expert, and, as such, qualified to give such testimony or opinion evidence; and was properly permitted to give the number of feet of pine timber cut from the lands cruised by himself and Loper.

The defendant should have been permitted to ask witness Young the question: "Was it the Washington Lumber & Turpentine Company you were working for when you had possession of this property?" The court sustained the objection, and due exception was reserved. It located the time of the cruise, when Young had possession of the timber as agent of the Washington Lumber & Turpentine Company, and afforded an inference as to the question of interest, bias, or agency of the witness at the time of the trespass and while making the cruise. That is to say, that it had a tendency to support the testimony of the secretary of the United States Lumber & Cotton Company to the effect that Young was not in its employ in doing the acts of possession and protection of timber as related to the alleged trespass and conversion. Moreover, this question was in corroboration of Onderdonk's evidence that what timber he cut on these lands was by mistake, and not as a purchaser, and that he took up the matter with Washington Lumber & Turpentine Company, represented by Young, to settle the unintentional and mistaken trespass in the cutting. Booker v. Jones' Adm'x, 55 Ala. 266, 275; Zimmerman Mfg. Co. v. Dunn, 163 Ala. 272, 274, 50 So. 906.

■ It is settled that in an action for trover there must be a concurrence of the right of property, general or special, and of possession, or the immediate right of possession in the plaintiff at the time of the conversion to maintain an action therefor. Zimmerman Mfg. Co. v. Dunn, supra; Booker v. Jones' Adm'x, supra.

The question sought to be propounded and answered by Young shed light upon the fact of possession, or the immediate right of possession of the timber on the lands by the Washington Lumber & Turpentine Company, rather than by the United States Lumber & Cotton Company, who is the plaintiff seeking damages for the trespass and conversion. Citizens' Bank v. Pearson, 217 Ala. 391, 116 So. 350.

There was other evidence—as the conveyances in evidence—affording an inference

that the timber when cut did not belong to plaintiff, having been theretofore sold and conveyed and possession given to the Washington Lumber & Turpentine Company, who was at the time in the actual possession of the lands—thus Young's agency was relevant.

■ The foregoing inquiries were material upon the question of conversion or trespass vel non, and whether or not the conversion was inadvertent. The rule for the measure of damages in such action, and where conversion was intentional or inadvertent, or by an innocent vendee, is indicated in White v. Yawkey, 108 Ala. 270, 19 So. 360, 32 L. R. A. 199, 54 Am. St. Rep. 159. In the latter class of cases as trover, the value of the thing severed is its market value immediately after its severance, when it has become a chattel. Gray v. Alabama Fuel & Iron Co., 216 Ala. 416, 420 (9), 113 So. 35; Gowan v. Wisconsin-Alabama Lumber Co., 215 Ala. 231, 110 So. 31; Davis v. Erwin, 214 Ala. 341, 107 So. 903. In the matter of damages for injury to the land by destruction of the trees and by trespass, the damage is not measured by the value of the timber or property severed, but by the injury to the land by reason of its severance—the difference between the value of the land immediately before and after the trespass. White v. Yawkey, supra; Foust v. Kinney, 202 Ala. 392, 80 So. 474, and authorities; Fuller v. Fair, 202 Ala. 430, 80 So. 814, and authorities; Warrior Coal & Coke Co. v. Mabel Mining Co., 112 Ala. 624, 20 So. 918; Brinkmeyer v. Bethea, 139 Ala. 376, 35 So. 996; Riggin v. Hogg, 203 Ala. 243, 82 So. 341.

The judgment of the circuit court is reversed, and the cause remanded for the foregoing rulings on evidence.

Reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

### On Rehearing.

THOMAS, J.

■ 1. The court is invoked on rehearing by counsel for the appellee to declare whether the learned trial court has defined the measure of damages, in the event recovery on the trover count may be had. The jury were instructed in accordance with the decisions of this court extending from Jenkins v. McConico, Adm'r, etc., 26 Ala. 213, to Ford v. Bradford, 218 Ala. 62, 65, 117 So. 429; the rule being, where the thing converted has a fixed value, the measure of damages is that value at the time of the conversion with legal interest; if its value is fluctuating, the jury may, *at its discretion*, take the highest value at any time between the conversion and the trial. However, this is not a matter of *right* to the plaintiff, but a discretion of the jury to so award.

2. We have indicated that there were provisions in the sales contract—between the plaintiff and Washington Lumber & Turpentine Company—for the right as to the timber and its release from the original or trust instrument, on selection and payment, which were for the protection of the original grantors as to subsequent installment payments accruing.

It will be noted further that the contract between plaintiff and Washington Lumber & Turpentine Company of date of April 11, 1924, expressly recited, as a part of the consideration and inducement to such sale, that:

"Whereas, said party of the first part no longer has facilities for watching over and protecting its said lands and timber from loss and damage by fire, theft, trespass and depredation; and

"Whereas the timber standing, growing, lying and being upon said party of first part's lands, is no longer useful or necessary for the purposes of party of first part, and * * *

"Whereas the Board of Directors of party of first part, at a regular meeting called for that purpose, at which there were present and voting a majority of the members of said Board of Directors, has adopted a resolution to the effect that said timber is no longer useful or necessary for the purposes of party of first part, and that its sales at $3.25 per Thousand feet, log measure, to party of the third part, is for the best interest of all parties concerned, in that said sale will provide custodian ship over said timber that will lessen waste thereof by fire, theft, trespassing and other depredation and further provide the necessary funds for the payment of taxes and for the reduction of the bonded indebtedness of party of first part, and

"Whereas said party of first part has, pursuant to the aforesaid resolution of its board of directors, in conformity with the terms and conditions of the aforesaid amended deed of trust, made application to party of second part as successor trustee, under said amendment of trust, to release to party of third part all of the aforesaid timber from lien retained in the aforesaid deed of trust according to the terms and conditions thereof, and of these expressed in this conveyance;

"Now therefore, In consideration of the premises and the mutual premises and covenants, considerations and agreements therein contained, the said parties of first and second part, do hereby grant, bargain, sell, and convey unto party of the third part, all of the merchantable timber, standing, growing, lying or being upon the lands of party of first part, situated in the Counties of Mobile and Washington, State of Alabama, together

with all rights of way, easements and privileges, over and across said lands, that may be necessary for the cutting, removal or manufacture into lumber of said timber, or the use thereof for the turpentine or other naval stores operations, and also the right to locate upon any of said lands at such places as party of third part may deem necessary and advisable, saw mills, lumber or timber yards, turpentine and naval stores, plants or stills, camps, logging roads or causeways. * * *

"Party of third part has paid to party of second part, the sum of $19,500.00 cash, in advance, at the time of the execution and delivery of this conveyance, the receipt thereof is hereby acknowledged, said sum of $19,500.-00 being in full of the first year's guaranteed payment of $17,000.00 and $2500.00 of which is to be credited on the guaranteed installment of $8500.00 which may become due one year from the date thereof."

The provisions of the contract or conveyance of date of May 13, 1925, between United States Lumber & Cotton Company, party of the first part, Cecil Barnes and Harrison B. Riley, parties of the second part, Washington Lumber & Turpentine Company, party of the third part, and E. L. Jordon, called party of the fourth part, recite the sale of the standing timber to Washington Lumber & Turpentine Company on April 11, 1924, and the transfer by the latter of the respective timber to Jordan and Brownlee; provide for extension of time for cutting, and recite further that:

"Whereas, by said indenture of April 11th, 1924, the time allowed to Party of the Third Part for the cutting and removal of said timber will expire on January 1st, 1930, and the party of the fourth part desires to secure an extension of said time to January 1st, 1934, and offers and is willing to pay the additional consideration hereinafter described for such extension, and also to bind himself personally to pay for such of said timber as is north of the aforesaid land and the rights with respect thereto acquired or to be acquired by him, at the price and under the provision contained in said indenture of April 11th, 1924, as hereby changed; and,

"Whereas, The party of the second part deems it to the interest of the Trust represented by him as Trustee as aforesaid, to obtain that assurance which will be furnished by the personal obligation of the party of the fourth part, that the said timber and rights will be paid for as provided and stipulated in the said indenture as hereby modified, it being understood and believed that the party of the fourth part is solvent and possessed of ample means to assure the performance of his obligation to make said payments; and * * *

"Whereas, the party of the second part deems it to the interest of the holders of the bonds secured by the aforesaid Trust Deed, that the said indenture of April 11th, 1924, be altered and changed as is hereby contingently done, but is unwilling to take final action in that behalf, unless and until the holders of a majority of said bonds approve such course and the said Trust Deed be amended by adding thereto and incorporating therein provisions authorizing and ratifying the execution of the aforesaid indenture of April 11th, 1924, the execution of this instrument, and the making of the arrangements, alterations and changes herein set forth, and * * *

"The timber which now stands released from the lien of said indenture of April 11th, 1924, because of having been paid for on estimates under the provisions of the said indenture, shall remain and continue so released, and the right to the party paying therefor to use and consume the same under the terms of the said indenture, shall not be impaired or affected hereby. It is hereby further agreed that after party of the third or fourth parts has paid the full purchase price for timber on any given section or fraction of section, and the same shall have become 'automatically released from the effect of the lien thereon,' reserved in said indenture of April 11, 1924, or by this instrument, any subsequent breach and forfeiture of the terms of either such instruments shall not prevent party of the fourth part, his heirs or personal representatives, from entering upon the lands of party of the first part and removing the timber so paid for in full within the time fixed by said indenture and this instrument."

The evidence affords the inference of the possession of Washington Lumber & Turpentine Company, and that it was being looked after or cared for by Mr. Young, as an employee of said corporation. That witness testified:

"I could not tell what were cut for timber and what trees were cut for ties. Seeing those trees that were cut and being here where it was done, and then going there and checking the timber, I could tell what were cut for ties as there was none. *I knew because I looked after it and saw that none was cut.* With the exception of the past two years I have been on these lands very little —once when we estimated the hardwood, once when we were measuring the logs. Since then I have been on this '40,' that one, and the other. Don't remember what years I worked for Plaintiff. * * * Was working for Everitt and Boykin when I estimated the timber which was cut—looking after their general business. I was looking after all their property under the instruction of Frank W. Boykin and R. M. Boykin. I began to work for them the year the U. S. Lum-

ber and Cotton Company went bankrupt, and have been working for them ever since, except for 6 months. Don't remember when the Company went bankrupt. * * * I started to work for them since Mr. Boykin and them bought the timber. *The timber was cut by Mr. Onderdonk while I had charge of it, for Everitt and Boykin.* All of the cutting was done during that time, while I had charge of it for them. I got after Mr. Onderdonk about the cutting and checked up some stuff on NE¼ of NE¼ Section 23. It wasn't necessary to check it through. There was 13,445 ft., 258 logs and 92 trees. There was 19,027 ft., 130 trees, 357 logs on NW¼ of NE¼, Section 23, East of Railroad. There was some timber West of Railroad, but presume that it belonged to Mr. Granade, the Defendant. We had Mr. G. T. Loper to survey a line through there before we checked the timber —starting at the sand pit. * * * I checked up with Mr. B. L. Onderdonk and turned it in to his woodsman, and also turned in my report to Everitt and Boykin. This was no part of the 130 trees. It was cut by Onderdonk at an earlier date." (Italics supplied.)

Mr. Jordan gave evidence to the effect that the Washington Lumber & Turpentine Company had been in possession of these lands since 1910. Wiggins testified that the original of the instrument of April 11, 1924, was not in the possession of plaintiff company at the time of the trial; that "Mr. F. W. Boykin (for Washington Lumber & Turpentine Co.) was supposed to take possession of all the property conveyed in said deed, but did not know if he did or not. There has been a joint contract since then—Mr. Boykin never had possession of the timber under that contract—No sir, except for turpentine purposes. He had a turpentine lease but didn't take possession of the property. We were selling Mr. Boykin the timber, he was paying Mr. Barnes, trustee for plaintiff, who furnished the money to the plaintiff with which, the taxes were paid." Witness Wiggins was then asked: "As to the lands described in this suit, the two '40's' in 14, and two '40's' in 23, had the Washington Lumber & Turpentine Co. submitted to the U. S. Lumber and Cotton Company any timber estimate as is called for by this contract, or had they paid the U. S. Lumber and Cotton Company, the agreed price for this timber?"

Defendant objected to the question as being "irrelevant, immaterial and incompetent; as calling for an opinion or conclusion of the witness; as seeming to vary the terms of the instrument (it must stand as it is)."

The court overruled the objection, whereupon the defendant then and there duly excepted.

The witness answered: "No sir, none of that had been released or paid for."

Counsel for defendant moved the court to exclude the answer as "irrelevant, immaterial, and incompetent, calling for the opinion or conclusion of the witness; as attempting to vary the terms of the instrument; and because it would not affect the title or rights of any one in this case."

The court denied the motion, whereupon defendant then and there duly excepted.

Witness Wiggins here testified "that plaintiff had a copy of that certain instrument executed May 13, 1925, by U. S. Lumber & Cotton Co., Washington Lumber and Turpentine Co., and E. L. Jordan."

The witness Onderdonk testified that he was notified by Mr. Young that he was cutting over the line on the company's land, and that he settled for that cutting.

The evidence showed that, when the contracts of April 11, 1924, between plaintiff and the Lumber & Turpentine Company, and of May 13, 1924, between the said two companies with Jordan and another, were made, Mr. Boykin was the president of the Washington Lumber & Turpentine Company. Therefore it was important to show the nature of the agency of Young as to these lands and timber between these parties. And the question to Young, "Was it the Washington Lumber & Turpentine Company you were *working for* when you had possession of this property?" should have been answered at defendant's insistence. It tended to show agency, and time.

3. The application for rehearing invokes expression and judgment as to plaintiff's right to maintain the action under either trespass or trover counts. The questions are presented on the giving of the general affirmative charges requested in writing by plaintiff, and given by the trial court, and in the refusal of the charge requested by the defendant to the contrary as to the respective counts.

The record evidence shows that the interest of Jordan accrued on and after May 13, 1925, the date of the supplemental or extended contract by plaintiff, the Washington Lumber & Turpentine Company, to Brownlee, as to certain of the lands, and that certain of the timbers were regarded and treated as released from the lien of the first instruments, having been paid for in the original recited consideration and paid in cash for the first year (1924) installments, and as a part payment on installments for the year 1925. And the testimony of Jordan shows that he did not wait for a further ratification by the first party to this contract, but acted on his contract with the second and third parties, and went upon certain of the lands.

The time of the cutting is rendered certain when Onderdonk and Jordan reached the lands "about the same time." Onderdonk tes-

tified he went into possession and was cutting from December, 1924, and that Jordan told him he had his lease or right of turpentine "from Washington Lumber & Turpentine Company, one of Frank Boykin's companies," and that this occurred in January or February, 1925. And Young testified it was cut before summer, as this was the time he measured up the stumpage and estimated the timber that was cut.

If plaintiff, at the time of bringing the suit, had no right or title to the timber in question, and was not then in possession of the same when cut, or was not entitled to the immediate possession thereof at the time of conversion, he could not recover for the conversion. Booker v. Jones' Adm'x, 55 Ala. 275; Zimmerman Mfg. Co. v. Dunn, 163 Ala. 272, 274, 50 So. 906.

■ This rule as to personal property was given application in Bynum v. Gay, 161 Ala. 140, 49 So. 757, 135 Am. St. Rep. 121, to the effect that trees cut from plaintiff's land, and without the knowledge or procurement of defendant, were converted into timber and incorporated in the latter's fences and buildings, it lost its character as personal property and became realty, and not subject to an action of trover. Thweat v. Stamps, 67 Ala. 95; 26 L. Ch. 1106, §§ 15–19; 38 Cyc. 2016. And, on the other hand, it may be said to be the general rule that, where a part of the freehold, such as coal, minerals, timber, sand, gravel, crops, etc., or fixtures, *is severed from the freehold*, they become personalty, and trover will lie for the conversion. It is further well established that trover—a transitory or personal action—is not a proper form of action to try title to land. Aldrich Mining Co. v. Pearce, 169 Ala. 161, 166, 52 So. 911, Ann. Cas. 1912B, 288, and authorities.

In Green v. Marlin, 219 Ala. 27, 29, 121 So. 19, it was recently declared that the owner of freehold cannot maintain trover for timber severed from it, *if at the time of severance* he had not actual or constructive possession thereof; that constructive possession by plaintiff following title to freehold is sufficient to maintain trover for cutting timber, unless defendant has actual adverse possession. White v. Yawkey, 108 Ala. 270, 19 So. 360, 32 L. R. A. 199, 54 Am. St. Rep. 159.

■ After all that may be said of the rule of these cases, to maintain trover a plaintiff must have at the time of the conversion a concurrence of the right of property, general or special, with an immediate right of possession in plaintiff: Pinckard v. Cassels, 195 Ala. 353, 357, 70 So. 153, cited in L. R. A. 1917C, 16, and authorities; Long v. Nadawah Lumber Co., 202 Ala. 523, 81 So. 25; Holman v. Ketchum, 153 Ala. 360, 45 So. 206; First Nat. Bank of Gadsden v. Burnett, 213 Ala. 89, 90, 104 So. 17; Southern Ry. Co. v. City of Attalla, 147 Ala. 653, 41 So. 664; Citizens' Bank v. Pearson, 217 Ala. 391, 397, 116 So. 350; Vol. 27, Alabama & Southern Digest, p. 344.

In Tallassee Falls Mfg. Co. v. First Nat. Bank, 159 Ala. 315, 49 So. 246, the rule stated as above applied to growing crops required to remain with the mortgagor until a specified date, and the mortgagee could not bring trover where a conversion occurred before that time. And Long v. Nadawah Lumber Co., 202 Ala. 523, 81 So. 25, held the removal of standing timber by the owner after expiration of the time for removal would render him liable for trespass, though the value of the trees would be no part of the recoverable damages; that the owner of standing timber has no right to recover for conversion of timber by severing and removing it from the land, where severance was done after expiration of the period for removal, since the owner had no *constructive possession of the timber at the time of conversion.*

■ In the instant case at the time of its conversion, plaintiff was without right to enter and *possess itself of the real property and the standing timber thereon;* or of the timber that was cut within the one-year period on advance payment therefor, which had been made by the Washington Lumber & Turpentine Company. Therefore plaintiff was not, in the required sense, in possession of the timber, and at that time Mr. Onderdonk had actual possession of the land and timber; and the plaintiff was not entitled to the immediate possession of that timber at the time it was cut and removed by Onderdonk, who cut it from the land, converted it from real to personal property as a purchaser and not as an agent of defendant.

The affirmative charge should have been given for defendant as to the count for trover and conversion. Green v. Marlin, supra.

■ It is without dispute in the evidence that Granade did not, in person or by agent, enter upon the land in question in the removing of the timber therefrom by Onderdonk, and was therefore not liable under the count for trespass. Long v. Nadawah Lumber Co., supra; Williams v. Hendricks, 115 Ala. 277, 22 So. 439, 41 L. R. A. 650, 67 Am. St. Rep. 32. Moreover, the evidence shows that plaintiff *was not at the time* in possession of the lands from whence the timber was cut, or had not at such time the immediate right of possession to such land and timber right. There was error in giving the general affirmative instruction requested by the plaintiff, and defendant's written charges B and C should have been given.

The application for rehearing is denied.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.