### WOLFF v. ZURGA et al.

### 2 Div. 30.

Supreme Court of Alabama.

Oct. 12, 1933.

McKinley & McDaniel, of Linden, for appellees.

**THOMAS, Justice.**

The suit was for conversion of staves. The complaint was laid as the time of the conversion under a videlicet, which was alleged to have been committed prior to the commencement of the suit. Corona Coal & Iron Co. v. Bryan, 171 Ala. 86, 54 So. 522, Ann. Cas. 1913A, 878; Howton v. Mathias, 197 Ala. 457, 461, 73 So. 92; Ballenger v. Ballenger, 205 Ala. 596, 88 So. 826; MacArthur Bros. Co. v. Middleton, 200 Ala. 147, 75 So. 895. The staves were shown to have been removed before the suit.

It is decided that the ownership of personal property may be stated as a fact by a witness. Steiner Bros. & Co. v. Tranum, 98 Ala. 315, 13 So. 365; Rasco v. Jefferson, 142 Ala. 705, 38 So. 246; Sovereign Camp, W. O. W., v. Hoomes, 219 Ala. 564, 122 So. 686; Gaston v. McDonald, 220 Ala. 155, 124 So. 208. The witness Wolff should have been permitted to answer as to his ownership of the staves prior to and at the date of the alleged conversion before the suit. This was cured by the witness finally stating: "I have had business dealings with Anton Zurga. Had some dealings with him in March 1931, at Asahel in Wilcox County, Alabama. That was on March 30th. At that time Louis Wolff and Mr. Sam Lee Jones were present. I told him that he was due me $513.00 for money that I had advanced him to buy timber and pay labor and everything for making 2100 staves which he had on hand; that I would give him 30 days to get up the money and pay me if he

J. D. Ratcliffe, of Monroeville, and J. M. Bonner, of Camden, for appellant.

failed to do so, I would close him out. Zurga agreed to that. The staves were branded with my brand, 'P.W.' Those were the same staves described in this suit. On April 30th, 1931, I went back to see Zurga, in company with Alex Stewart, my wife's brother. At that time I presented to him a statement in writing showing the amount due me and he said it was all right; that he didn't have the money, and I demanded the staves of him and he delivered them to me. The market value of the staves at that time and place was $500.-00, and I credited his account with that amount."

■ Plaintiff should have been permitted to answer the question, "Zurga was manufacturing staves for you?" It was material and competent as shedding light on the question of the ownership of the staves before the date of the alleged conversion and explained why he said the staves were branded "P.W." It was the contention of plaintiff that he advanced the money to purchase timber to produce staves for him, as a loan to Zurga, and not to cut and manufacture staves in his own right. This effort of plaintiff to prove ownership by his own testimony, in its materiality and competency, is illustrated by the testimony of Zurga that plaintiff had no such ownership; that he bought and manufactured the staves for himself, and not for plaintiff; and that he did not deliver the staves on the railroad's right of way to or for plaintiff. So, also, of the question, "Did you have a final settlement with Zurga then?" Plaintiff had testified he closed Zurga out and credited $500 to his account on April 30, 1931; and was asked further, "Did he surrender (the) possession of the staves to you?" And, "Did you own these staves on June 23, 1931?" To these questions the defendants' objections were sustained and respective exceptions reserved. These questions were competent. However, this was all covered and cured by plaintiff's later answer that he "owned them on June 23, 1931," and that he "saw the staves after April 30, 1931, in the same place where they had been"; that he "saw Zurga and Ruzic in Judge Miller's office in Camden after that time. Zurga said he sold the staves to Ruzic for Three Hundred Dollars. I demanded the staves of Ruzic and he refused to surrender them. After that time I saw Ruzic at the Virginia Hotel in Selma and told him he had bought my staves; he said he would see about it. I made demand for them and he said he could get them. * * * The time I saw Ruzic at the Virginia Hotel was before the other time I saw him. He said if the staves were mine he would give them to me. * * * I did not tell him he could sell the staves. I did tell Zurga while he was making the staves that I would give him $225.00 per thousand for them. The staves were stacked on the railroad right of way.

* * * I didn't brand the staves myself, a negro branded them. I didn't see him do it. They were all branded." (Italics supplied.) If this covered the foregoing questions denied to plaintiff, to which exceptions were reserved, there was no prejudicial error. Such is the effect.

■■ To support an action of trover the right of property, special or general, and possession or immediate right of possession, must concur in the plaintiff at the time of the conversion alleged—must have been a wrongful taking or a wrongful detention, or illegal assumption of ownership, or an illegal user or misuser—are the rules that obtain to support such action, and must exist and operate at the time alleged and at the trial. Beall v. Folmar Sons & Co., 122 Ala. 414, 26 So. 1; Moebes v. Garth, 210 Ala. 201, 97 So. 703; Buchmann v. Callahan, 222 Ala. 240, 131 So. 799.

■ It is settled that where chattels are the subject of the contract of sale and a necessary act is required "to individualize the thing sold," the title does not pass until that has been done, "because the thing sold is not (theretofore) susceptible of identification"; that is, "the property is not specified, and the alleged purchaser can not know or assert which is his." Mobile Savings Bank v. Fry, 69 Ala. 348, 350; Iron City Grain Co. v. Arnold, 215 Ala. 543, 112 So. 123; Warten v. Strane, 82 Ala. 311, 8 So. 231.

■ The plaintiff did not claim to have acquired title to all of said staves so placed and situated at the time of the alleged conversion. His claim was that he acquired title to 2,100 of the staves contained in the bulk of four or five thousand staves on the railroad's right of way. The 2,100 staves claimed by the plaintiff were not shown to have been separated from the bulk of the staves, either by the plaintiff or by Zurga, except that plaintiff testified that they were individualized or identified by his mark "P.W." The plaintiff does not testify that he otherwise separated the 2,100 staves to which he claimed title, from the mass as indicated; but testified that all of the staves "were stacked on the railroad right of way"; that he "saw the staves after April 30, 1931, in the same place where they had been," and that they were marked "P.W.," so he was informed; that he did not brand them himself or see them branded. Alex Stewart said the staves were branded "P.W." and Zurga said they were so branded.

Frank Navine, who, as Ruzic's foreman, inspected this lot of staves for the latter, did inspect, of the mass of four or five thousand, the 2,120 staves purchased by Ruzic; he testified: "There were other staves besides the ones I inspected. There was a big pile of them there."

The inspection by Navine, and the purchase by Ruzic, were in May, 1931, approximately a month after plaintiff claimed to have acquired title to 2,100 of the staves. The plaintiff testified that the staves were there in the same place where they originally were, and were seen by him, *subsequent to April 30, 1931*, the date on which plaintiff claims to have acquired title to 2,100 of them. The evidence shows there was no other *separation* or *identification* of the 2,100 staves claimed by plaintiff from the mass of four or five thousand which were owned by Zurga and which were "stacked on the railroad right of way" at the time Ruzic bought the 2,120 staves in May, 1931. We have indicated that the plaintiff said they were identified by his mark "P.W.," so he was informed by an unnamed laborer.

The cases of Mobile Savings Bank v. Fry, supra, and Warten v. Strane, supra, are on the question as to whether the plaintiff acquired no title to the 2,100 staves claimed to have been purchased from Zurga. If he had no title thereto, and no right to the possession of any particular 2,100 staves, he could not, in any event, recover in this action. That is, if the 2,100 staves had never been separated and "individualized" from the bulk "stacked on the railroad right of way" at the time Ruzic purchased his 2,120 staves, they could not be the subject of conversion. The plea of not guilty put in issue the plaintiff's title to the staves sued for; and the burden of proof was upon the plaintiff to make out his title and the right of possession to the staves claimed in the complaint. There being contradictory tendencies as to marking the staves and setting them apart to plaintiff, the lower court was justified in its ruling on requested charges by reason of these adverse tendencies of evidence. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135.

█ The suit is against Ruzic and Zurga. They acted together in the sale of the staves and removal to Mobile. The sale was in May, 1931, when the staves, four or five thousand, were on the right of way of the railroad at the two points indicated in the evidence. They were shipped per bill of lading in evidence that is omitted from the bill of exceptions. If that instrument was before us, it might indicate the date of shipment, the fact of the number or bulk of shipments, and if there were separate markings. The evidence shows that when in Mobile on the wharf there were some staves of this lot marked "P.W."

There is conflict in the evidence as to when the conversation set out above, as to defendant's statement to plaintiff in the hotel in Selma, was made, and as to whether at such time the removal and shipment to Mobile had not been made. Thus the issue of conversion vel non by the removal and shipment was for the jury.

The evidence shows without conflict that Ruzic had no dominion over the staves prior to the shipment evidenced by the bill of lading in evidence; did not by positive or tortious act manifest or exercise any dominion over the subject-matter claimed to have been converted. Granade v. United States Lumber & Cotton Co., 224 Ala. 185, 139 So. 409; C. W. Zimmerman Mfg. Co. v. Dunn, 163 Ala. 272, 50 So. 906; Booker v. Jones' Adm'x, 55 Ala. 266. In Jenkins v. Holly, 204 Ala. 519, 520, 86 So. 390, 391, is the observation that: "'The owner's loss, and not the wrongdoer's gain, is the point chiefly regarded. It is the interference with the owner's prerogative of doing what he will with his own, that constitutes the chief element in the wrong.'" Judge Freeman's note 15 Am. Dec. 152. The same principle is announced in Bolling v. Kirby & Brother, 90 Ala. 215, 7 So. 914, 24 Am. St. Rep. 789.

There was evidence of the shipping of the staves to Mobile by Ruzic after defendants had respectively sold and purchased the one from the other; that they were identified there, by the plaintiff with his brand upon the same; and it is not questioned but that the staves on the wharf in Mobile were those at the initial shipping in question. The plaintiff and his witnesses said they were plaintiff's staves and were branded "P. W." As to this the witness Zurga testified: "I did not turn over to Pete Wolff any of the money I received from Ruzic for these staves. The staves were branded 'P.W.' at the time I sold them to Ruzic, but a negro had so branded them without my knowledge or consent; I caught the negro branding the staves, and ran him off."

On the evidence and its reasonable inferences, the questions of identification, separation, and thereafter conversion vel non were for the jury. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135.

We have indicated that the questions denied to plaintiff were thereafter covered by his testimony. We find no reversible error in the record before us, and the judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.