(110 So. 818)

## LINCOLN RESERVE LIFE INS. CO. v. ARMES. (6 Div. 520.)

(Supreme Court of Alabama. Nov. 26, 1926. Rehearing Denied Jan. 6, 1927.)

**1. Evidence ⬠489—Testimony as to value of converted books, by witness who had opportunity to form correct opinion, held admissible (Code 1923, § 7656).**

In action for conversion of books, testimony as to their value, by witnesses shown to have opportunity to form correct opinion, *held* admissible, in view of Code 1923, § 7656, under which testimony as to market value is opinion evidence not requiring witness to be expert.

**2. Trover and conversion ⬠46—Measure of damages for conversion is market value at time of conversion or prior to trial, with interest.**

In action for conversion of books, measure of damages is reasonable cash market value of books at time of conversion, or at any time thereafter prior to trial, with interest.

**3. Witnesses ⬠280—Cross-examination as to whether witness swore to something he knew nothing about held properly excluded as argumentative.**

Where witness, who testified that all converted books. were in good condition, said on cross-examination that he had not sworn to condition of those at bottom of box, question as to whether he swore to something he knew nothing about *held* properly excluded as argumentative, especially where he afterwards fully answered question.

**4. Appeal and error ⬠1170(7)—Allowing shorthand statement of contents and purpose of converted books held not prejudicial (Supreme Court rule 45).**

In action for conversion of books, where one of books was before jury, court did not prejudice rights of defendant by allowing witnesses who had read it to give shorthand statements of its contents and purpose, in view of Supreme Court rule 45.

**5. Trover and conversion ⬠36—Plaintiff's testimony as to search for converted books held proper.**

In action for conversion of books, testimony that, when plaintiff went to defendant's building for books, janitor said he had given them away to another, to whom witness went to ascertain if he knew anything about them, *held* proper.

**6. Trover and conversion ⬠36—Testimony as to time allowed for removal of converted books held admissible.**

In action for conversion of books, testimony that defendant's president had not placed limit on time within which books should be removed, and that his conversation with witness was in January or February, *held* proper, although such president had testified that he set limit of 30 days in October or November.

**7. Trial ⬠194(14)—Instruction that four months after notice was reasonable time for removal of books subsequently converted held properly refused, in view of evidence.**

In action for conversion of books, charge that four months was more than reasonable time in which to remove them after notice *held* properly refused, where evidence was conflicting as to when notice was given.

**8. Trover and conversion ⬠4—Charge that defendant, if gratuitous bailee of property converted, must exercise only slight care, and not exercise control over property, held proper.**

In action for conversion of books, oral charge that, if defendant was gratuitous bailee, it must exercise slight care over property, and not exercise acts of control over it to exclusion of owner, *held* not erroneous, when considered with entire oral charge.

**9. Trial ⬠295(1)—Part of oral charge objected to should be considered in light of entire charge.**

In considering objection to part of oral charge, it should be considered in connection with entire oral charge.

**10. Trover and conversion ⬠67—Instruction that defendant owed no duty to prevent injury to books by dampness held properly refused, in action for conversion.**

In action for conversion of books, charge that defendant owed no duty to prevent injury to books by rain or dampness *held* properly refused.

**11. Trover and conversion ⬠67—In action for conversion of books, charge that no bailment existed held properly refused.**

In action for conversion of books, charge that no bailment existed between plaintiff and defendant as to books sued for *held* properly refused, being immaterial.

**12. Trover and conversion ⬠67—Instruction as to liability of gratuitous bailee held properly refused in action for conversion of books.**

In action for conversion of books, charge that bailment can only spring from contract, and that only bailment arising in case was gratuitous, and that gratuitous bailee was only liable for bad faith, *held* properly refused.

**13. Trial ⬠194(14)—Charge that, if defendant converted plaintiff's books, it would be liable whether it held as bailee or not, held erroneous as general affirmative charge.**

In action for conversion of books, charge that, if defendant converted plaintiff's property by selling or otherwise disposing of it, defendant would be liable whether it held goods as bailee or had mere naked possession, whether voluntarily assumed or not, *held* reversible error as being so involved and confusing that it could be construed as being general affirmative charge for plaintiff.

---

⬠For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

'On Rehearing.

**14. Appeal and error ⬅761—Assigned error will be considered, though not specifically mentioned in brief.**

Assigned error, not specifically mentioned in brief, will be considered where principle involved was presented by propositions with authority cited, and they were argued and insisted upon.

**15. Appeal and error ⬅1064(1)—Charge which was involved, confusing, and in effect equivalent to general affirmative charge, held reversible error.**

Although Supreme Court will not reverse for charge having misleading tendencies, charge which is involved, confusing, and in effect equivalent to general affirmative charge for plaintiff, *held* reversible error.

Appeal from Circuit Court, Jefferson County; Richard V. Evans, Judge.

Action by Ethel Armes against the Lincoln Reserve Life Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

These charges were refused to defendant:

"X. I charge you that, as a matter of law, four months was more than a reasonable time for Armes to remove the books after being notified by Stallings to remove them."

"(4) (Assignment 6) I charge you that the defendant was under no duty to plaintiff to prevent injury to the books by rain or dampness."

"(10) (Assignment 8) I charge you that no bailment existed between the plaintiff and the defendant as to the books sued for."

"(a) (Assignment 9) I charge you that bailment can only spring from contract, express or implied, between the parties, and that under the testimony in this case the only bailment which arose was that the defendant, after Armes' conversation with Stallings, was a gratuitous bailee for a reasonable time, and as such gratuitous bailee was only liable for bad faith."

The following charge was given at plaintiff's request, and is made the basis of assignment 4:

"If you believe the evidence in this case, and are reasonably satisfied therefrom, that the defendant converted plaintiff's property by selling or otherwise disposing of it, the defendant would be liable in damages for such conversion, whether it held such goods as bailee or had mere naked possession thereof, whether voluntarily assumed or not."

The following excerpt from the court's oral charge is made the basis of assignment 3:

"Now, then, if there is no consideration to support the contract, in other words, if it is a gratuitous bailee, and by that I mean where the promisor—that is, the bailee—agrees to take it without consideration, the Lincoln Reserve Life Insurance Company, the promisor, received no consideration for it, if such was the case, then it would be its duty to act as a gratuitous bailee, or, in other words, to exercise slight care over it, and not to exercise acts of dominion and control over it to the exclusion of the owner."

W. B. Harrison and Thos. J. Judge, both of Birmingham, for appellant.

It is essential to the bailment that there be an acceptance of the subject-matter. Bohannon v. Springfield, 9 Ala. 789; 6 C. J. 1104. A gratuitous undertaking of an agent is without obligatory force against the principal. Melbourne v. L. & N., 88 Ala. 443, 6 So. 762. A gratuitous bailee is liable only for gross neglect or bad faith. Haynie v. Waring, 29 Ala. 263; Prince v. Ala. State Fair, 106 Ala. 340, 17 So. 449, 28 L. R. A. 716; Thomas v. Hackney, 192 Ala. 27, 68 So. 296; 6 C. J. 1127. A gratuitous bailee may terminate the bailment at any time he chooses, and, after the owner has been notified to remove his goods, he is not liable for damages thereafter resulting. Roulston v. McClelland, 2 E. D. Smith (N. Y.) 60; De Lemos v. Cohen, 28 Misc. Rep. 579, 59 N. Y. S. 498. The owner of premises has the right to remove gratuitously bailed property, and the removal does not constitute a conversion. Geisler v. David Stevenson Brewing Co., 126 App. Div. 715, 111 N. Y. S. 56; Opperman v. Littlejohn, 98 Miss. 636, 54 So. 77, 35 L. R. A. (N. S.) 707; Huntington v. Herrman, 111 App. Div. 875, 98 N. Y. S. 48. Three months is ample time for gratuitous bailee to move the subject-matter of the bailment. Lyons v. Philadelphia R. Co., 209 Pa. 550, 58 A. 924. Before actual value can be shown, it must be made to appear there is no market value. 13 Ency. Evid. 510; 1 Jones on Evid. § 169. The contents of a book is provable only by the book itself. Perryman v. Greenville, 51 Ala. 507; Hames v. Brownlee, 71 Ala. 132; Ga. Pac. R. Co. v. Propst, 90 Ala. 1, 7 So. 635; L. & N. v. Boggs, 199 Ala. 225, 74 So. 337. A witness cannot be permitted to testify as to motive, intention or belief of parties. Arnold v. Cofer, 135 Ala. 364, 33 So. 539; McCormick v. Joseph, 77 Ala. 236.

Lange, Simpson & Brantley, of Birmingham, for appellee.

It is not requisite that the acceptance of a bailment be actual; one that is constructive is sufficient. 6 C. J. 1104, § 25. A gratuitous bailee is liable for intentional destruction or conversion. Haynie v. Waring, 29 Ala. 263. Where notice is given to remove property which is being gratuitously stored, and the property is not removed, this does not vest title in the owner of the premises. Opperman v. Littlejohn, 98 Miss. 636, 54 So. 77, 35 L. R. A. (N. S.) 707. As to proof of value, see Corpus Juris, "Evidence," §§ 117, 147, 148, 151; Code, 1923, § 7656; Bromberg

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

v. Norton, 208 Ala. 117, 93 So. 837. Assignments of error, not argued in brief, are waived. Republic I. & S. Co. v. Quinton, 194 Ala. 126, 69 So. 604; Sup. Ct. Rules, 10, 12. The giving of charges which have a tendency to mislead does not constitute reversible error. Hart v. Bray, 50 Ala. 446; Suell v. Derricott, 161 Ala. 259, 49 So. 895, 23 L. R. A. (N. S.) 996, 18 Ann. Cas. 636; Beatty v. Palmer, 196 Ala. 67, 71 So. 422.

MILLER, J. This is a suit by Ethel Armes against Lincoln Reserve Life Insurance Company, a corporation, for damages for the conversion by it of about 1,400 books, entitled "The Story of Coal and Iron in Alabama," the property of the plaintiff.

This cause was tried on count 2 for the conversion of this property. It was in code form. Defendant's plea was not guilty.

There was a judgment for the plaintiff on the verdict in her favor by a jury, and, from that judgment, this appeal is prosecuted by the defendant.

The plaintiff was owner and author of these books. They were stored in the basement of the Chamber of Commerce Building in Birmingham, prior to 1915. The book was written, compiled, and published in 1910 or 1911. There were originally 5,000 volumes. They were all sold except those involved in this suit and a few others. The defendant became the owner of this building in October, 1922, and took possession of it, and these books were still in the basement. They remained there in boxes until some time in February, 1924. There was evidence that they were injured while there by dampness caused from leaks, and there was evidence to the contrary.

The inspector of the city fire department came to the building, went into the basement, and informed the janitor of the defendant's building that this rubbish there, including these books in the boxes and other things therein, had to be cleaned out. The janitor of the defendant informed the president of the defendant of the instructions of the city inspector. The president told Mr. Roberts, the janitor, as testified to by the janitor, this:

"Mr. Stallings said go ahead and clean it out, and see if I could find out who these books belonged to, and, if I couldn't, just to throw them out."

"Some two or three weeks after Mr. Stallings told the witness to move the books, they were moved, that was right along about the time Mr. Stallings went to Gulfport. Mr. Stallings was not there when the books were thrown out. The janitor and two or three others were there. The books were sold for 40 cents per hundred pounds by the witness along with other stuff. Everything he had in the basement was sold for $8.40. Witness kept the money and did not turn it over to the Lincoln Reserve or to Mr. Stallings, nor did Mr. Stallings ask for it."

The president testified as follows on this subject:

"After the fire department spoke to me about the condition of this basement, I told Mr. Roberts that he would have to get in there and clean that all out and tear the chicken fence out. I didn't say the books specially, but clean it all out, iron and stuff that was there and papers and all that."

"The witness did not tell Mr. Roberts to sell the books or give them away, and did not know anything about it, and never heard that they were sold until this suit was brought. When witness told Mr. Armes that he would have to get the stuff out of the basement in 30 days, no consideration was paid to let the books stay in there 30 days."

The evidence of the defendant tended to show that prior to this, in October, 1923, the president of the defendant was informed by the brother of the plaintiff that these books belonged to her. The president of defendant testified on this subject:

"That to his best recollection, when Mr. Armes walked into the office, he said he wanted to see about some books there, and the witness told him that there were a lot of old books down in the basement and witness had been trying to find out for over a year to whom they belonged, and that he understood that they belonged to the Confederate soldiers. Mr. Armes said, 'No; they belong to my sister;' and the witness said, 'I want them out of there; they are in our way;' and he asked how long he would have to get them out in, and the witness inquired if he could get them out in 30 days, and he said he would."

E. C. Armes, brother of the plaintiff, testified on this subject that this conversation with Mr. Stallings was in January or February, 1924, and that he said to Mr. Stallings:

"Mr. Stallings, I have come to see you about the books of my sister, called 'The Story of Coal and Iron in Alabama.' They are stored in the basement of your building, and I wanted to know if it would be agreeable to continue them in the basement. He said, 'No,' he wanted to get them out, and the witness replied, 'All right, Mr. Stallings, I will make arrangements to get them out.' That Mr. Stallings then walked into his office away from the witness, and the witness had nothing else to say. Col. Stallings did not converse or make any inquiries of the witness, but did say he wanted to use the space down there and then turned around and left the witness. Such conversation occurred the latter part of January or the first part of February, 1924. When the witness went back to get the books, they were not there; they had been sold for junk."

[1] Under our statute (section 7656 of the Code of 1923), direct testimony as to market value is in the nature of opinion evidence. One need not be an expert or dealer in the article, but may testify as to value, if he has had an opportunity for forming a correct opinion.

All of the witnesses who testified to the value of the books were shown to have had an opportunity for forming a correct opinion as to the market value of them. The court did not err in permitting these witnesses to testify that the reasonable market value of the books was $4 each wholesale; that retail price was $5 per volume, and how many were sold at that price; that, when an advertisement was on about them soon after they were published, many volumes were sold at retail for $5 each; that when they were not advertised only a few were sold annually; and that there was a demand for the books in February, 1924.

All of this tended to show to the jury the reasonable market value of the books at the time they were sold by the janitor of the defendant to the junk dealer at 40 cents per hundred pounds; and there was proof that the weight of the 1,300 books sold by the janitor was about 2,600 pounds. There was evidence tending to show these books were worth on the market, as junk, from 40 to 90 cents per hundred pounds.

[2] This is an action for damages for conversion of the books, and the measure of damages recoverable under that count is the reasonable cash market value of the books at the time of the conversion, or at any time thereafter prior to the trial, with interest. Sharpe v. Barney, 114 Ala. 361, 21 So. 490; Mattingly v. Houston, 167 Ala. 167, 52 So. 78.

[3] The purchaser of the books from the janitor was examined by the plaintiff. He had one of the books. It was in good condition, and he testified that the books were all dumped on the floor and all looked like the one in evidence, and all were in good condition. He did not examine each book, but all appeared to be in the same condition. He testified on cross-examination that he "picked up one of the books and looked at it, but had not sworn that he knew the condition of the books on the bottom of the box." Defendant was not permitted by the court to ask him this question then on cross-examination:

"Then when you swore the books were all in good condition, you were swearing something you don't know anything about, weren't you?"

In this the court did not err. It was arguing with the witness, and then he afterwards fully answered the question as follows on cross-examination:

"Further testifying, the witness said he could only see the books on top, and the balance of the books looked just as good as the one he picked up, but he knew nothing about the bottom books; that he did not know where the books came from."

The books were shipped by the purchaser to the paper mill, and they were ground into pulp again.

[4, 5] One of the books was before the jury for their inspection and to be read by them, if they desired; and the court did not prejudice the rights of defendant by allowing witnesses who had read it to give shorthand statements of its contents and purpose. Rule 45 of this court. And the court did not err in allowing Armes to testify, when he went for the books, the janitor of defendant told him that "he gave them away to Jaffee," and witness "went to Jaffee to find out if he knew anything about them."

[6] The president of the defendant testified that he told Armes, in October or November, 1924, he could get the books out in 30 days. The court did not err in permitting Armes to testify that absolutely no limit whatever was placed on the time by the president within which he could get the books out of the basement, and that the conversation was in January or February, 1925.

[7] The court did not err in refusing written charge X, requested by the defendant. The evidence was in conflict as to whether Stallings told Armes in October or November, or in January or February, to move the books. This charge improperly assumes Stallings told Armes to move them 4 months before they were moved.

The evidence of the plaintiff tended to show that the books were removed and sold within 30 days after Armes was notified to remove them, and defendant's evidence tends to show they were moved and sold about 4 or 5 months after he was told to remove them.

[8, 9] The oral charge of the court excepted to, appearing in assignment of error No. 3, when considered, as it should be, in connection with the entire oral charge of the court, is free from error. Bolling v. Kirby, 90 Ala. 215, 7 So. 914, 24 Am. St. Rep. 789; Conner v. Allen, 33 Ala. 515; Freeman v. Scurlock, 27 Ala. 407.

[10-12] Written charges appearing in errors assigned and numbered 6, 8, and 9, requested by the defendant, were properly refused by the court. They are abstract in this case. It must be remembered there is only one count in the complaint, which was submitted to the jury, which was for conversion of the books; and under that action no damages to the books from rain, dampness, or bad faith are recoverable, and it is immaterial to the issue whether the defendant was a bailee gratuitous or otherwise of the books. In Bolling v. Kirby, 90 Ala. 215, 7 So. 914, 24 Am. St. Rep. 789, it is said:

"Conversion upon which recovery in trover may be had must be a positive, tortious act. Nonfeasance, or neglect of legal duty, mere failure to perform an act made obligatory by contract, or by which property is lost to the owner, will not support the action."

See C. J. vol. 6, p. 1125, § 65, headnote 13. See, also, Mattingly v. Houston, 167 Ala. 167, 52 So. 78.

[13] The written charge, requested by the plaintiff and given by the court, which is set out in assignment No. 4, is so involved and confusing that it could have been construed by the jury as the general affirmative charge in favor of the plaintiff, to which she was not entitled under certain aspects of the evidence, and the court erred in giving it. Justice SAYRE is also of the opinion the defendant was entitled to the general affirmative charge.

For the error mentioned, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.

On Rehearing.

MILLER, J. [14] The appellee insists, upon rehearing, that the charge mentioned in assignment of error No. 4, upon which the case was reversed, was not insisted upon as error in appellant's brief. It is true this charge was not specifically mentioned by the appellant in brief, but the principle involved therein was presented by propositions with authorities cited, and they were argued and insisted upon. Ala. Fuel & Iron Co. v. Williams, 207 Ala. 99, 91 So. 879.

[15] It is also suggested that the court will not reverse the trial court for giving a charge which has misleading tendencies. This is also true, but this charge, as will be noted from the original opinion, is more than merely misleading, as it is involved, confusing, and is in effect equivalent to the general affirmative charge for the plaintiff, in view of the undisputed evidence in the case.

The application for rehearing is denied.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.