20 So.2d 870

**SMITH et al. v. TRIPP.**

6 Div. 256.

Supreme Court of Alabama.

Jan. 11, 1945.

Rehearing Denied March 1, 1945.

P. A. Nash, of Oneonta, Bradley, Baldwin, All & White, of Birmingham, and Hood, Inzer, Martin & Suttle, of Gadsden, for appellants.

Higgins, Lamb & McCown and Lawson H. Myers, all of Fayetteville, Tenn., J. T. Johnson, of Oneonta, and Finis E. St. John, of Cullman, for appellee.

BROWN, Justice.

This is an action on the case by the administratrix of Roscoe Tripp, deceased, under the Homicide Act, Code 1940, Tit. 7, § 123, against William Edward Smith and the Standard Oil Company of Kentucky, a corporation, for wrongfully causing the death of plaintiff's intestate on the 3rd of August, 1943.

The verdict for the plaintiff was returned by the jury under count one of the complaint, which averred as inducement that, "plaintiff's intestate occupied an automobile truck then and there being operated on a public highway of the State of Alabama, namely, the Bee Line Highway, otherwise known as and called United States Highway No. 31, Alabama Highway No. 3, at a point approximately one-half mile north of the village of Bangor, Alabama, in Blount County, Alabama, where plaintiff's intestate had a right to be," and that said William Edward Smith who was at the time and place, "an *officer,* servant, agent or employee of the defendant Standard Oil Company of Kentucky, a corporation, while acting within the line and scope of his authority as such caused, allowed or permitted an automobile truck then and there *under his control to come in contact* with the automobile truck occupied by plaintiff's intestate thereby causing the death of plaintiff's intestate." This was followed by the general averment that the death of plaintiff's intestate was caused by the negligence of said Smith, "while acting in line with and within the scope of his employment in that he negligently caused, negligently allowed or negligently permitted an automobile truck then and there *under his control* to come in contact with the automobile truck occupied by plaintiff's intestate at the time and place aforementioned."

The demurrer, which was overruled, takes the point that said count is indefinite in its averments as to the scope and nature of said Smith's control over the defendant's truck; that it does not aver that he was the driver of said truck and had physical control of its movements on the highway.

"In actions based on *misfeasance* or *non-feasance,* the rule, as settled by our decisions, is that, when the complaint avers the facts from which the duty arises, a general averment of negligence is sufficient under our system of pleading. The pleader is not required to specify the particular acts or omissions, from which the conclusion of negligence is deducible." Mobile & Ohio R. Co. v. George, 94 Ala. 199 [214], 10 So. 145, 150; Doullut & Williams v. Hoffman, 204 Ala. 33, 86 So. 73, and cases cited supporting the second headnote, pp. 35, 36, and p. 75 respectively.

Nevertheless when the injury or loss results from active force applied and arises under the doctrine respondeat superior, the rules of good pleading require that, the complaint by way of inducement show the instrumentality causing the injury, and that the agent or servant to whose acts negligence is ascribed had actual manual control of such instrumentality or was present directing its movement. Doullut & Williams v. Hoffman, supra, and other authorities cited supra; Graham v. Werfel, 229 Ala. 385, 157 So. 201; Birmingham Stove & Range Co. v. Vanderford, 217 Ala. 342, 116 So. 334; Strickland v. Davis, 221 Ala. 247, 128 So. 233; Burns v. Blythwood, 236 Ala. 639, 184 So. 346.

The averments of said count one, construed most strongly against the pleader, are subject to the interpretation that Smith's control was merely official and supervisory, and not the actual manual operation of the truck, and was subject to the defect last above stated which was pointed out by the specific grounds of demurrer, and the court erred in overruling the demurrer. This error, however, was rendered innocuous by the undisputed

proof that Smith was in fact an employee of the defendant oil company, was the driver of said truck, acting within the line and scope of his employment. Best Park & Amusement Co. v. Rollins, 192 Ala. 534, 68 So. 417, Ann.Cas.1917D, 929; Birmingham Southern R. Co. v. Goodwyn, 202 Ala. 599, 81 So. 339.

Defendants pleaded the general issue, in short by consent, with leave to give in evidence any matter which if well pleaded would constitute a defense to the action.

■ The defendants offered in evidence seven photographs taken after the collision which are made Exhibits 1, 2, 3, 4, 5, 6 and 7, Exhibits 1, 2, 3, 5 and 7 were admitted without objection, but the court on objection of plaintiff refused to admit in evidence Exhibits 4 and 6. The purpose for which Exhibits 4 and 6 were offered, as stated by counsel, was to show the position of defendants' truck on the highway after the collision, it being shown by evidence before the exhibits were offered that a part of the other truck had been removed before the pictures were taken. After examining said photographs we are of opinion that the defendants had full benefit in the photographs which were received in evidence. Exhibit 4 appears to have been taken close to the scene while the fire was raging and does not give a clear view of the oil tank trailer which is much clearer in Exhibit 5; and Exhibit 6 shows nothing but a mass of wreckage, which apparently covered more than half of the highway after the fire had subsided, and is substantially the same as Exhibit 7.

The defendant also had the full benefit of the diagram made by the witness Bates showing the position of the defendants' truck and trailer when Bates, the highway patrolman, arrived on the scene before the photographs were taken, and admitted by Smith to be correct. In these circumstances the court will not be put in error for rejecting the two exhibits four and six.

The appellants insist that they were entitled to the affirmative charge which they requested in writing and which the court refused. The basis of this insistence is, to quote from brief—

"The only direct evidence with reference to the position of the transport truck in the highway immediately before and at the time of the accident, is that of Appellant Smith himself, who testified positively and definitely that at all times immediately before and at the time of the accident, the transport truck was being driven on its proper side of the highway. It was Appellee's theory and assumption in the trial below that the transport truck was being operated on the wrong side of the highway just before the accident and that this condition caused the driver of the hog truck to cut to his right too far and to run into the concrete post. In an effort to sustain this theory, the Appellee offered the testimony of some witnesses, who on direct examination testified that in their judgment the left rear corner of the transport trailer was near or over the center line of the highway,—however, these same witnesses on cross examination admitted that they could not be certain about this. From the testimony of these witnesses Appellee insisted that the jury had a right to assume that the transport truck was being negligently operated on the wrong side of the highway before the collision. * * *

"Even if it should be assumed that the left rear end of the transport trailer was near or over the center of the highway, we take the position that such fact would not justify the submission of this case to the jury. If this fact should be established by the evidence, which we challenge, this fact alone would not establish liability unless it was shown further that the act of driving on the wrong side of the highway was the *proximate cause of the injury* [Morrison v. Clark, supra (196 Ala. 670, 72 So. 305); Teague v. Alabama Coca Cola Bottling Co., supra (209 Ala. 205, 95 So. 883)]. The evidence is without dispute that the immediate, direct, efficient cause of the collision was the striking of the concrete guardrail post by the hog truck. What caused the hog truck to run into the concrete post is the pivotal question. * * *." [Parenthesis supplied.]

The evidence is without dispute that the scene of this tragedy occurred about one-half of a mile north of the village of Bangor in Blount County, Alabama, on what is referred to in the evidence as a straight-a-way connecting an S curve, the point of collision being 60 feet from the end of the northern curve and approximately half way between the termination of the southern curve and the northern curve. Otherwise stated, the straight-a-way was about 120 feet in length. At this point the highway passes through a moun-

tainous country as appears from the photographs with a deep ravine on the east side of the highway, the embankment being about fifteen feet high. On the west is a slight fill at the foot of the mountain which rises to the west along the highway. The southern end of the reverse curve approaching from the direction of Bangor going north turns to the left and just past the straight-a-way the road turns sharply to the right. The evidence further shows that the outside of the curve is something like thirty inches higher than the inside of the curve. The evidence is without dispute that the truck in which deceased was riding left the pavement and ran off on the shoulder of the highway, hit the cable and the seventh post on the west side of the highway, and turned immediately across the highway and collided with defendants' truck, striking the same between the left front fender and the cab door, and the two tractors in contact came to rest with the left front wheel of the northbound truck resting against the post on the right side of the highway, and the right wheel against the cable, which was forced east some six or eight inches or more. The trailer of the south bound truck turned on its side with wheels to the north, the rear wheels within the line of the highway, and the rear end of the body resting against the ninth concrete post counting from the north. The tank trailer of the defendants' truck came to rest standing diagonally across the east lane of the highway with the rear end of the trailer pointing south eight degrees west, with the southwest corner of the tank standing just on or slightly over the median line. At this point the evidence is in sharp conflict.

The witness Bates testified that he could not tell where the south bound trailer left the highway north of the scene but there was a mark or track from post No. 7 directly to where the southbound tractor was resting when he reached the scene of the accident.

The defendant Smith testifying in behalf of the defendants, when asked to explain to the jury the route followed by the hog truck and up to the time of the collision, stated:

"The best I remember, the hog truck came on down, I couldn't tell whether it was in the middle of the road or on his side and it came on down and seemed to, instead of taking the curve it just kept going straight and hit that concrete post almost directly opposite me. * * * On his right side. * * * Best of my judgment it was the front of the truck, the right front. * * *. As he came around here his lights were shining out this way (Indicating). They were shining over this way (Indicating on diagram). * * *

"Q. I believe you said the truck was traveling about thirty-five or forty miles an hour in your judgment? A. Yes, sir.

"Q. Were they going at approximately that rate of speed when it struck that post? A. Yes, it never slowed up.

"Q. When it struck the post, what happened, Mr. Smith? A. It careened off of the post, and directly into the side of my truck.

"Q. Indicate to the jury the route followed by the oil truck when it struck the post and ran into the side of your truck? A. I believe Mr. Bates pointed out the position as near perfect as * * * by the diagram right here.

"Q. When it struck the post then the hog truck shot across the highway to its left and into the side of your truck on the east side, is that right? A. Yes, sir.

"Q. Was your truck on the right hand side of the highway at the time that the hog truck ran into you? A. Yes, sir.

"Q. Where was your truck hit by the hog truck? A. Between the front—the door and the left front fender.

"Q. Between the door and the left front fender? A. Yes, sir.

"Q. There is just one door on the left front tractor of the gasoline truck, is that right? A. Yes, sir.

"Q. Describe that impact of the collision to the jury the best you can, Mr. Smith? A. Well, it was such a jar until it felt like that I was hit by a train.

"Mr. Lamb. We object to that.

"The Court. I sustain the objection.

"Mr. Suttle. We reserve an exception.

"Q. Was the impact terrific or was there a light collision there? A. It was terrific.

"Q. What did you do, if anything, when you first noticed that hog truck shooting across the highway? A. I put on my brakes and cut to the right.

"Q. Did it happen very quickly after it struck this post, or was there any appreciable length of time? A. Right immediately after it hit the post it came across. * * *."

Smith further testified that the right tire of his trailer was about a foot off the edge of the pavement when it came to rest. This witness further testified:

"Q. What is the rate of speed you were going when you cut to the right, when the collision occurred? A. The best of my knowledge, I was making around twenty miles an hour."

The 11th Rule of the Road embodied in Tit. 36, Code 1940, § 11 provides: "Meeting of vehicles.—Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving the other at least one-half of the main traveled portion of the roadway as nearly as possible."

Section 28 provides: "The driver of a motor vehicle traversing defiles, canyons or mountain highways shall hold such motor vehicle under control and as near the right hand side of the highway as reasonably possible and upon approaching any curve where the view is obstructed within a distance of two hundred feet along the highway shall give audible warning with a horn or other warning device. * * *"

The testimony above stated going to show that the driver of defendants' truck pulled to the right immediately before the collision, that he was then going twenty miles an hour and that his truck came to rest after the collision with the southwest corner of the tank slightly over the median line or just on the same, and that the tank was then pointing south about eight degrees west, justified an inference to be drawn by the jury, in connection with the other evidence in the case, that the northbound truck was hugging the inside of the south curve immediately before the collision, and that he had not entirely cleared the west lane of the highway when the collision occurred. The highway at this point was 21 feet in width, and to be clear of the imputation of negligence, the west side of the northbound truck, which was eight feet in width, was due to be at least eight inches east of the median line of the highway, under the statutes above quoted. We are, therefore, of the opinion that the question of negligence was for the jury, and that there was ample evidence, if be-lieved, to support the verdict. Southern R. Co. v. Kirsch, 150 Ala. 659, 43 So. 796.

The contention of the appellants that the striking of the post by the southbound truck was an efficient independent intervening cause insulating the negligence of the northbound truck driver, ignores the tendency of the evidence going to show that the striking of the post by the southbound truck was stimulated by the negligence of the defendant driver in driving his truck, not observing the rules of the road embodied in the quoted statutes. Claude Jones & Son v. Lair, 245 Ala. 441, 17 So.2d 577; Armstrong, Admrx., v. Montgomery Street Ry. Co., 123 Ala. 233, 26 So. 349.

The 7th assignment of error is in the following words: "The Court erred in overruling appellants' objection to statement by appellee's attorney in his closing argument to the jury as follows: 'These plaintiffs have been driving this road for years and years and they knew this road and all of these curves.' "

The language quoted speaks of "these plaintiffs." There is only one plaintiff in this case, Jessie Tripp, Administratrix of her husband's estate, and true it is, there is no evidence that she had ever been over this road. There are two defendants and the evidence was without dispute that the defendant Smith had been in the employ of the other defendant for seven years as a truck driver, driving this highway. We are persuaded that this statement by Mr. Lamb was intended to refer to the defendants. If so, it was justified by the evidence. If it referred to the plaintiff, it was wholly immaterial, and the objection should have been sustained. But after an examination of the record we are unable to perceive how this statement could have in any way influenced the jury. We do not think the case should be reversed because of this incident.

We find no error in the record and the judgment of the circuit court is due to be affirmed. It is so ordered.

Affirmed.

GARDNER, C. J., and LIVINGSTON and SIMPSON, JJ., concur.