48 So.2d 239

**ALABAMA GREAT SOUTHERN R. CO. v. RUSSELL.**

**6 Div. 717.**

Court of Appeals of Alabama.
March 22, 1949.

Rehearing Denied May 17, 1949.

Reversed after Remandment March 21, 1950.

Further Rehearing Denied May 23, 1950.

Benners, Burr, Stokely & McKamy, of Birmingham, and Jones, Dominick & McEachin and Liston C. Bell, all of Tuscaloosa, for appellant.

348

Jas. J. Mayfield, of Tuscaloosa, for appellee.

HARWOOD, Judge.

Charles Russell, plaintiff below, gained a verdict and judgment in the amount of $800 in a suit against the Alabama Great Southern Railroad Company. The complaint claimed damages because of defendant's action in negligently permitting combustible material to accumulate on its right of way, which material was ignited by fire escaping from one of defendant's locomotives. As a proximate result of the negligence of the defendant a large amount of timber and fences were rendered useless, and plaintiff's land and vegetation thereon was rendered less valuable.

In the complaint as filed it was alleged that plaintiff's land was adjacent to the defendant's right of way.

After conclusion of the testimony the defendant's attorney called the court's attention to the facts that the evidence showed that plaintiff's land was about a half mile distance from defendant's right of way, and insisted that the defendant was entitled to the general affirmative charge because of the variance between the allegations of the complaint and the proof.

Thereupon with consent of defendant's attorney the complaint was amended in one of the points of variance, and as amended showed at this point that plaintiff's land adjoined the land of Jimmie Hinton whose land was adjacent to the defendant's right of way.

Thereafter the court called the attention of plaintiff's attorney to the fact that a supposed variance still existed, and a second amendment was attempted, which defendant's attorney contends was made without his consent or knowledge.

On petition of defendant a writ of certiorari was granted by this court causing the records and pleadings in the court below to be forwarded to this court.

The allowance of this second amendment by the court was the basis of one of defendant's grounds of its motion for a new trial. Voluminous affidavits were submitted by the attorneys for the respective sides. It is likewise strenuously and lengthily argued and asserted as error on this appeal.

We pretermit consideration of the propriety of the court's action in permitting the so called second amendment, for in our opinion its allowance was in any case error without injury.

■ The complaint alleges that plaintiff's land was "adjacent" to defendant's right of way.

Adjacent means lying near, close, or contiguous, neighboring, bordering, etc. Webster's New International Dictionary, Sec. Ed.; Grimsley v. First Ave. Coal & Lumber Co., 217 Ala. 159, 115 So. 90. The term is a relative one, and its meaning must be determined in connection with the facts with which it is used.

In United States v. St. Anthony Ry. Co., 192 U.S. 524, 24 S.Ct. 333, 48 L.Ed. 548, the court held that an act granting the railroad the right of way through public lands with the privilege of taking material for construction of its road from public land "adjacent to" the line of the road, public lands within two miles of the railroad line were adjacent thereto.

While the words adjacent and adjoining are sometimes used as synonymous in their etymological sense, yet strictly speaking, there is a difference. That which is adjacent may be separated by some intervening object; that which is adjoining must touch in some part.

It is clearly inferable from the evidence that plaintiff's land was in an area of large tracts of woodland and interspersing cultivated tracts. It is our conclusion that even without the attempted amendment the allegations and the evidence conformed to a degree justifying the court's rulings on the demurrer in this regard.

Even if it be assumed that the plaintiff's land should not be considered as adjacent to the defendant's land because separated therefrom by a distance of a half mile, and that the court erred in overruling defendant's demurrer, this error was rendered innocuous by the undisputed proof that plaintiff did own a tract of land within one half mile of the railroad line, and that his land was burned over. Smith v. Tripp, 246 Ala. 421, 20 So.2d 870, and cases therein cited.

The evidence presented by the plaintiff was to the effect that on Sunday afternoon, 16 February 1947, fire was observed in sedge grass growing on defendant's right of way immediately after the passage of one of defendant's trains. This fire spread to the lands of Jimmie Hinton and then onto the land of the plaintiff.

In June 1945 plaintiff bought 30 acres of land from Jimmie Hinton for $1250. Thereafter he erected certain buildings thereon and made other improvements thereon looking towards its operation as a farm.

When plaintiff purchased the land Hinton reserved all merchantable timber 4 inches and up 12 inches from the ground, for a period of twelve months, together with right of ingress and egress to remove said timber.

In this connection Hinton, a witness for the plaintiff, testified that he cut the "timber" trees on plaintiff's land, and sold the rights to the smaller trees, or what is referred to in the testimony as "paperwood," to a Mr. McDaniel.

As to how much timber had been removed from plaintiff's land by Hinton, or his vendee McDaniel, the record shows the following during the cross examination of Mr. Hinton:

"Q. Did Mr. McDaniel cut the paper wood? A. Well, I cut the saw timber first and then let him cut the paper wood.

"Q. And Mr. McDaniel did cut the paper wood? A. He cut some of it and he didn't finish that tract because my timber contract ran out on it, and at that time we had an agreement of so much per cord, and after this time ran out, I sold the timber.

"Q. Do you know how many cords Mr. McDaniel cut on Charlie's land? A. He didn't cut very much; I don't know how many."

The plaintiff testified that of the 30 acres he had bought from Mr. Hinton, he had placed about 18 acres in cultivation, and some 12 or 13 acres were in woodland pasture. In this woodland pasture area the plaintiff testified that there were, in his judgment between 600 and 700 young pine trees growing. Mr. Hinton also testified that this area was thickly covered with young pine and gum trees.

According to plaintiff and his witnesses the vegetation on this 12 or 13 acres of woodland pasture, together with about 1300 feet of three strand barbed wire fencing and posts, were destroyed by the fire, with the exception of an area of considerably less than one acre.

The plaintiff further testified on direct examination concerning merchantable timber left on his land after expiration of the reservation in the Hinton deed. He stated that there was "some good timber left" in

the "wet places." In this connection plaintiff's attorney states in his brief:

"In addition to this small timber, there was a quantity of timber which Jimmy Hinton had reserved, but was unable to cut because of wet weather, and this also passed on expiration of the lease. This too was consumed by fire."

Plaintiff also testified on direct examination in reply to the question "What was the condition of the trees and grass down there after the fire?" that there was nothing that a cow or mule could graze on.

After testifying that he was familiar with the value of property in the community in which he lived the plaintiff was, over defendant's objection and exception in each instance, permitted to testify that the reasonable value of his property before the fire was $2500, and its reasonable value after the fire was $1500.

The ground of defendant's objection was that the measure of damages was the value of the particular things destroyed, i. e., the vegetation and fencing, and not the reasonable market value of plaintiff's farm before and after the fire.

The above was the only evidence presented by the plaintiff tending to establish the value of his property injured by the fire.

On cross examination the plaintiff testified that he himself had bought a 1/8 interest in 52 acres of land sometime previously, paying $50 for his interest, and later selling it for $175. He also knew of two other transactions in real estate, but did not know the purchase price or the sale price in either instance.

Plaintiff also testified he did not know the value per acre of the cultivated portion of his land, nor the value per acre of the wooded area of his farm.

At the conclusion of this line of testimony the defendant moved that the plaintiff's testimony concerning the value of the damages to his land be excluded on the ground that it had been shown that the plaintiff was not qualified to testify as to values. The court denied this motion.

■ No error resulted from the court's ruling in the premises. It is well settled

by our decisions that the owner of personalty may testify as to its value, whether he is generally familiar with such values or not. Ward v. Reynolds, 32 Ala. 384; Moss v. State, 146 Ala. 686, 40 So. 340; Southern Ry. Co. v. Morris, 143 Ala. 628, 42 So. 17; Alabama Power Co. v. Armour & Co., 207 Ala. 15, 92 So. 111; Lincoln Reserve Life Ins. Co. v. Armes, 215 Ala. 407, 110 So. 818. In such cases it is considered that ownership itself renders the owner competent to testify as to its value. For the same reason, an owner of land, by virtue of his ownership, may testify as to its value. Wigmore on Evidence, 3rd Ed., Vol. III, Sec. 714; Hellstrom v. First Guaranty Bank, 54 N.D. 166, 209 N.W. 212, 45 A.L.R. 1487; Lyle v. Ginnold, 174 Wash. 104, 24 P.2d 449; Sacramento Suburban Fruitlands Co. v. Soderman, 9 Cir., 36 F.2d 934; Kerr v. Great Atlantic & Pacific Tea Co., 129 Me. 48, 149 A. 618.

We now revert to the court's action in overruling defendant's objection to questions propounded to the plaintiff tending to show that the value of his land was $2500 before the fire and $1500 after the fire. The questions were objected to on the ground that such was an improper method of showing damages in this case.

■ "The burden of proving the fact and amount of pecuniary damage is on the party asserting the damage, particularly in the case of damages which are uncertain or have not been admitted, and such party has the burden of showing his damages by evidence which is competent and which furnishes a basis for their assessment in accordance with the measure of damages properly applicable." 25 C.J.S., Damages, § 144.

Under plaintiff's complaint he claimed that as a proximate result of defendant's negligence "large quantities of pine trees and hardwood timber were destroyed," and "a great number of fence posts and fence wiring were destroyed," and plaintiff's "land and vegetation thereon was otherwise charred, scorched, and rendered less valuable."

Plaintiff's proof tended to show the destruction of some merchantable timber,

though just how much cannot be gathered from the record. It also tended to show that a considerable number of fence posts and a quantity of wiring had been destroyed; and that the grass in his woodland pasture had been destroyed, together with between 600 and 700 young immature trees.

In the fairly recent case of Jefferson Lumber Co. v. Berry, 247 Ala. 164, 23 So. 2d 7, 9, 161 A.L.R. 544, our Supreme Court, speaking through Livingston, J., has made the following observation in reference to determination of damages to realty resulting from defendant's negligence:

" 'This is not an action of trespass, but an action for negligence resulting in injury. The true rule is said to be that "if the·thing destroyed, although it is part of the realty, has a value which can be accurately measured and ascertained, without reference to the soil in which it stands, or out of which it grows, the recovery must be for the value of the thing thus destroyed, not the difference in the value of the land before and after such destruction." Whitbeck v. New York Cent. R. R. Co., 36 Barb., N.Y., 644–647. This rule is applied to crops, grass, fruit trees, etc. Byrne v. Minneapolis, etc., Railway, 38 Minn. 212, 36 N. W. 339, 8 Am.St.Rep. 668; [Galveston, H. & S. A.] Railway v. Horne, 69 Tex. [643], 644, 649, 9 S.W. 440; Galveston H. & S. A. R. v. Rheiner et al., Tex.Civ.App., 25 S.W. (971), 972; Berard et al. v. Atchison, etc., R., (79 Neb. 830), 113 N.W. 537; Gresham v. Taylor, 51 Ala. 505. Our own court has said: "If the trespass consisted of a severance of a part of the freehold from the rest, for instance, growing timber or minerals, the value of the thing severed, while it constituted a part of the freehold at the time of severance, and not as a chattel after severance, may be regarded as a proper measure of recovery" (Warrior [Coal & Coke] Co. v. Mabel Mining Co., 112 Ala. (624), 626, 20 So. 918); and again, in a case where damages were claimed for a continuing trespass, that "the difference in the value" before and after the trespass "is an improper measurement of damages," although it might be competent evidence, to be considered by the jury in connection with the other evidence. Abercrombie & Williams v. Windham, 127 Ala. (179), 180, 182, 28 So. 387. Where there is damage to the land, and also destruction of property attached to the land capable of ascertainment as to its value, recovery may be had for both. Receivers [of Missouri K. & T. R. Co.] v. Pfluger, Tex.Civ.App., 25 S.W. 792; Ft. Worth [& N. O. R.] v. Wallace, 74 Tex. 581, 12 S.W. 227.'

"See, also, Foust v. Kinney, 202 Ala. 392, 80 So. 474.

"Here the value of the trees destroyed was capable of ascertainment without reference to the soil in which they grew. The damage to the soil itself was also ascertainable, and the appellee was entitled to recover for both."

█ It is obvious from the above statement that the proper formula for ascertaining the value of plaintiff's damages resulting from the injury to or destruction of his fence posts, and fence wiring, and grass was the value of these items injured or destroyed, and not the value of the land before and after the injury.

It is also to be noted that the Supreme Court also approved, as the formula for ascertaining damages to merchantable timber resulting from negligence, the value of the timber destroyed.

█ Apparently, as to growing trees, our decisions also permit the value of the damages caused by defendant's negligence to be established by the diminished value of the premises resulting from the injury, for in Southern Railway Co. v. Slade, 192 Ala. 568, 68 So. 867, 870, our Supreme Court stated: "Where growing trees are destroyed, the measure of damages is the diminished value of the premises." The court further stated that "Where buildings are destroyed, they are regarded as capable of a separate valuation, and the measure of damages is the value of the property at the time of the injury.'"

In Howell v. City of Dothan, 234 Ala. 158, 174 So. 624, 626, our Supreme Court stated:

"It is further established that growing trees are a part of the realty (Davis v. Mil-

ler-Brent Lumber Co., 151 Ala. 580, 44 So. 639), and that, where such timber is destroyed, the measure of damages is the diminished value of the land, caused by such destruction or inundation (Southern Ry. Co. v. Slade, 192 Ala. 568, 68 So. 867). Otherwise stated, the measure of the damage for destruction of timber is the difference between the value of the land before and after such trespass. Granade v. United States L. & C. Co., 224 Ala. 185, 139 So. 409; Federal Land Bank of New Orleans v. Davis, 228 Ala. 85, 152 So. 226; White v. Yawkey, 108 Ala. 270, 19 So. 360, 32 L.R.A. 199, 54 Am.St.Rep. 159; Warrior C. & C. Co. v. Mabel Min. Co., 112 Ala. 624, 20 So. 918; Brinkmeyer et al. v. Bethea, 139 Ala. 376, 35 So. 996; and see authorities, 80 A.L.R. 617 et seq.; 96 A.L.R. 74 et seq."

We can see no distinction, in so far as determination of resulting damages is concerned, between the formula permitting a showing of the "diminished value of the land" applicable in negligence cases, and "difference in value of the land" before and after a trespass.

■■ We therefore conclude that under the doctrines of our cases, damages resulting from destruction of growing trees may be shown either by showing the value of the destroyed trees, Jefferson Lumber Co. v. Berry, supra, or by showing the diminished value of the land, Southern Railway Co. v. Slade, supra; Howell v. City of Dothan, supra. To establish "the diminished value of the land" would, it appears to us, necessarily involve a showing of the value of the land before and after the injury. It is our conclusion therefore that in so far as proof of damage as to plaintiff in this case resulting from destruction or injury to his growing trees is concerned, it was permissible to establish such damages by showing the value of plaintiff's land before, and after, the fire.

■ However, it must not be overlooked, that under plaintiff's pleadings and proof damages to his fences and grass were also before the jury. It is clear that under the doctrines of our cases above alluded to, the measure of damages as to the separable portions of his land damaged by this fire, such as the injury to his fences, and grass, the proper measure of his damages was the value of the injury to the particular things, and not the diminished value of the land.

Thus, while alleging and proving several elements of damages whose determination must be established by different formulas, the plaintiff attempted to establish the value of all of these elements of damage by a formula applicable to determining the damages to his growing trees, and inapplicable to other elements alleged and attempted to be proved by him. The burden was on the plaintiff to establish his alleged damages by the proper method and formula applicable to his respective damages as alleged and proved.

■ This vice in the questions propounded to the plaintiff seeking to establish all of his damages by evidence of the value of his land before and after the fire was pointed out in defendant's objections with sufficient clearness to have informed the court of this defect. In our opinion the court therefore erred in overruling defendant's objections in the premises.

■ It also follows that the plaintiff having failed to establish his damages by appropriate methods, the jury cannot be permitted to supply this defect by resort to speculation or conjecture. Seals Piano & Organ Co. v. Bell, 17 Ala.App. 331, 84 So. 779.

■ In the trial below the defendant introduced evidence tending to show that the plaintiff's injuries resulted from a fire which had begun burning the day before the "railroad fire," and with which the defendant was in nowise connected. This evidence merely created a question of fact solely within the province of the jury to determine.

The defense also introduced witnesses qualified to give opinion testimony as to the damages to plaintiff's land resulting from this fire. The tendency of their testimony was that the damages suffered by the plaintiff from the fire was between $15 and $25.

In examining one of these witnesses, Tully Jones, the defendant attempted to

show the value of the damages to plaintiff's fencing. Jones testified he was familiar with the costs of fencing, but had not noticed plaintiff's fence before the fire. The court sustained plaintiff's objection to this line of questioning on the ground that Jones admitted he was not familiar with plaintiff's fencing.

■ We pretermit consideration of appellant's contention of error resulting from this ruling, as the record discloses that no exception was reserved to the court's rulings in these instances.

Earnest Neighbors, a witness for the defendant, testified he had lived in the neighborhood of plaintiff's land all of his life, and was familiar with land values in that community, and was familiar with plaintiff's land both before and after the fire. He further testified that he knew the cost of fencing, and had observed all of plaintiff's fencing both before and after the fire. Over plaintiff's objection Mr. Neighbors was permitted to testify that the damage to plaintiff's fencing because of the fire was between $7 and $8.

■ However, the court sustained the plaintiff's objections propounded to Mr. Neighbors seeking to show the value per acre of the damages to plaintiff's woodland, on the ground that the measure of plaintiff's damages was the value of plaintiff's land before and after the fire.

■ In our opinion the court erred in this ruling. The evidence was relevant in support of opinion evidence, and legitimate evidence to be considered by the jury in fixing the diminished value of the land. Southern Railway Co. v. Slade, supra; Reynolds v. Great Northern Ry. Co., 119 Minn. 251, 138 N.W. 30, 52 L.R.A.,N.S., 91. The answers sought tended to shed light on the testimony of the plaintiff, and were relevant to a vital issue of this case. We would not however reverse this case because of this ruling, since it appears that Mr. Neighbors later testified that the value of plaintiff's land before the fire was $3000, and its value after the fire was $2975, a total damage of $25. Such error as resulted to defendant by the court's ruling would therefore appear to be innocuous.

■ It is our opinion that for the reasons above set forth the court erred in overruling the defendant's objections to the questions propounded to the plaintiff relative to establishing all of plaintiff's damages by the single formula inherent in the question. It is our further view that in the light of the plaintiff's sole effort and formula to establish his alleged multiple damages that the jury necessarily had to resort to speculation in determining the amount of plaintiff's damages. The court therefore also erred in denying plaintiff's motion for a new trial on the grounds that the verdict was contrary to the law and evidence of this case.

Reversed and remanded.

### After Remandment.

Our original opinion in this cause has been reversed by the Supreme Court, and the cause remanded to us for further consideration.

After reversal and remandment to this court the appellant filed in this court what it terms an application for rehearing, together with a brief in support thereof.

The appellee has filed a motion to strike this so-called application for rehearing filed by the appellant in this court, and has assigned some six grounds in support thereof.

■ Under the order of the Supreme Court this cause is remanded to us for further consideration. No efforts on the part of the appellant are necessary to effectuate this order. Nor does the fact that appellant did not apply for a rehearing in the Supreme Court in any way embarrass our duty to act under the mandate of the Supreme Court. As we view it, the appellant's application for a rehearing, and appellee's motion to strike same, must be looked upon as nonessential surplusage, in no way affecting the further processing of this cause in compliance with the orders of the Supreme Court.

As stated in our opinion, the sole evidence presented by the plaintiff tending to establish the amount of his damages was the plaintiff's testimony that the value of

his premises before the fire was $2500, and its value after the fire was $1500.

Cross examination of the plaintiff developed that some time previously, though plaintiff did not know when, as he couldn't "keep that in his head," he had bought a ⅛ interest in 53 acres of land for $50, and had sold it, he "believed year before last," for $175.

Plaintiff had also heard of two other real estate transactions in his neighborhood, though he did not know the amount of land involved in either transaction, nor the sale price.

Plaintiff further testified on cross examination that he did not know how much his open or cultivated land was worth per acre either before or after the fire, nor did he know the value of his woodland pasture before or after the fire.

Although plaintiff stated that the value of his farm after the fire was $1500, he testified that he had twice refused offers of $3000 for his place several months *after* the fire. It is to be noted that this amount is $500 more than plaintiff testified his place was worth before the fire.

On the other hand Earnest L. Neighbors, a witness for the defense, testified that he had lived in the vicinity of plaintiff's land all his life, 55 years, and was thoroughly familiar with it, both before and after the fire. Mr. Neighbors also testified that he bought wire every year, and was familiar with value of wire fences. He saw all of plaintiff's fence that was damaged by the fire, as he had been "all the way around it and looked at it good," and the amount of this damage would be $7 or $8.

Mr. Neighbors further testified that he was familiar with the value of land in the neighborhood, and that the value of plaintiff's place before the fire was $3000, and its value after the fire would be $3000 less $15, as "fifteen dollars, I would say, at the outside was the damages."

Mr. E. P. McDaniel, a witness for the defendant, testified that he had been in the timber business for twenty years. He had bought some of the timber (the paper wood) on the plaintiff's place from Jimmie Hinton, and had cut it, as well as timber on adjoining lands. Mr. McDaniel stated he was familiar with plaintiff's land before and after the fire; that about 18 acres of it was in cultivation, about 2 acres in pasture, and about 10 acres in woods.

This witness stated he had been on plaintiff's place frequently both before and after the fire. As to the fence, only six or eight posts had been burned, and he could not see that the wire had been damaged, "but very little."

Mr. McDaniel testified that he was familiar with the value of land in the plaintiff's neighborhood, and that the value of plaintiff's land before the fire was $3000, and after the fire its value was $2975.

On cross examination this witness testified that reproduction costs of pine trees about waist high would be approximately $12 per acre, and is scattered over 16 acres it would be around $7.50 per acre.

On redirect examination this witness testified that he had never seen anything like 700 or 800 pine trees in plaintiff's woodland; that actually only about 5 acres of the woodland was damaged by the fire, and that the reasonable amount of damage to this portion was about $4 per acre.

This witness further testified that the fence in the portion reached by the fire did not run in a straight line, but zigzagged, and was mostly nailed to trees, with a post now and then. After the fire, plaintiff had repaired the fence, and had put in only 3 new posts in doing so.

Ollie Wyatt, a witness for the defendant, testified that he had lived in plaintiff's neighborhood most of his life. After the fire he had gone all around plaintiff's land. He did not see much damage "not to amount to anything, I didn't figure," to either the fencing or the trees.

Frank Sellers, a timber cruiser and surveyor, testified for the defense that he had inspected plaintiff's property the day of the trial, going around the place, and into the woods. The woodland was "rolling and bluffy."

He found some eight or ten small pine trees that "looked like probably the fire killed them. I couldn't say about the other damage to those green trees, but there was

some, I would say eighteen or twenty trees around the edge where the fire burned— the fire didn't burn over all it, but the fire has done some damage there."

On cross examination this witness testified that he would say that about five acres of the woodland was burned over. A wet place on the south end had not burned, and the hillsides "wasn't burned so."

This witness said "he expected to submit a bill to the defendant for whatever the court gives me."

The general and well settled rule is that before a witness can give opinion testimony as to the value of land he must be shown to be familiar with the land and its value.

An exception to this rule is that the owner of land, by virtue of his ownership is considered prima facie qualified to testify to its value, without any further showing. This by virtue of a presumption that ownership creates a familiarity with the property. The weight to be accorded such value testimony by an owner being for the jury.

Where, as in this case, an owner's estimate of value is shown on cross examination to be little more than a bald conclusion, unsupported by any probative basis other than familiarity arising out of ownership and a possible desire for an over compensating verdict, then rationally small probative weight should, or properly can, be given to such evidence.

The plaintiff testified that his property was worth $2500 before the fire, and $1500 after the fire. Yet on cross examination he could give testimony to no sales of real estate in his community other than in one instance, in which he himself had purchased approximately 8 acres of land for $50, which he sold later for $175. Even as to this transaction the plaintiff could not remember when he purchased the 8 acres. Although he knew of two other land sales in his community he did not know the amount of land involved, nor the prices paid. Plaintiff could not give an estimate of the value per acre of his cultivated 18 acres, nor did he know the value of his woodland tract of 12 or 13 acres.

On the other hand competent witnesses for the defense, familiar with plaintiff's property both before and after the fire, gave testimony containing substantial probative content, that the damage resulting to plaintiff's property from the fire was between $15 and $25.

The weakness of plaintiff's evidence tending to establish the amount of his damages in itself seriously questions the sufficiency of the evidence to sustain the verdict of $800. We are clear to the conclution after a careful consideration of all the evidence that the verdict is contrary to a decisive preponderance of the evidence, and is wrong, and that the lower court erred in overruling appellant's motion for a new trial, several grounds of which pointed out this defect. This point was likewise assigned as error on the original submission of this cause, and strenuously argued in appellant's original brief.

Reversed and remanded.

### On Rehearing.

Appellee's counsel in his brief in support of his application for rehearing asserts that we ignored the testimony of two of plaintiff's witnesses, James Hinton and W. A. Nuchols in our statement of the facts in this case.

Mr. Hinton, who was familiar with plaintiff's land testified that the wooded portion before the fire "was pretty thick" with small gum and pine trees, and that after the fire the trees were very badly burned, and a majority of them were dead; that the pasture land was burned off clean; and that all of the fence posts that witness "went by" were burned, and some of the wire was on the ground.

There is a complete absence of any testimony by this witness as to the value of the damages sustained by the plaintiff, other than. the generalizations above set forth, which upon consideration are patently without real probative content as to the actual amount of damages suffered by the plaintiff because of the fire.

The witness Nuchols testified that at James Hinton's request he, in the latter part of August or the first part of September, went to see Hinton's land with the

356

expectation of buying it. Other evidence shows that the fire had occurred the previous February. He went by plaintiff's house and plaintiff went with this witness. The plaintiff did not attempt to show this witness his land. The witness and plaintiff went over land beyond plaintiff's house "toward the railroad," and they might have walked over some of plaintiff's land, but of this the witness was uncertain, as he did not know the directions they walked since he was a Mississippian, and was "turned around in this part of the country."

The land that this witness did see on this occasion "was plumb burned up," though he did not remember whether any fence posts were burned or not.

Again there also was no testimony by this witness as to the amount of damages suffered by the plaintiff. Indeed, in view of witness' own protestations as to complete lack of knowledge as to the location of plaintiff's land he was not qualified to give such testimony.

In so far as the issues of this case are concerned the testimony of Nuchols is utterly lacking in probative force.

Appellee's counsel further complains that distortion results from our statement of defendant's evidence in that we did not set out the testimony produced by the cross examination of defendant's witnesses. So far as we can see the testimony of these witnesses on direct examination was in nowise materially weakened or altered by their cross examination, and a fair summary of the tendency of their testimony was correctly set forth by us.

Application denied.